Merrimack,
No. 5428.

JANET L. WILLARD HANCHETT

*v.*

BREZNER TANNING COMPANY *& a.*

Argued May 3, 1966.
Decided June 30, 1966.

*Devine, Millimet, McDonough, Stahl & Branch* ( *Mr. Shane Devine* orally ), for the plaintiff.

*Booth, Wadleigh, Langdell, Starr & Peters* and *Charles J. Dunn* ( *Mr. Dunn* orally ), for the defendants.

BLANDIN, J. The exceptions of the defendants raise the pivotal issue of whether the accident which caused the death of the plaintiff's former husband, Robert L. Willard, arose " out of and in the course of " his employment by the Tanning Company, within the meaning of RSA 281:2 III ( supp ). The Court made the following findings of fact:

" Mr. Willard had been employed at the Tanning Company as fireman-mechanic for about one and a half years. He worked at the so-called split division of the plant, which was about one-half mile from the other division, hereinafter referred to as the main division; he took care of boilers and he also repaired any broken down equipment of the plant. At the time of the accident he was working on the third shift, which went from 11:00 P.M. to 7:00 A.M. That night, during working hours, he drove his automobile inside the carpentry shop at the split division for the purpose of making repairs on it; a torsion bar had been broken prior to his coming to work. He jacked up the car, got underneath it, and while he was underneath, the car came off the jack and killed him. . . .

" The Tanning Company maintained a four stall garage, with a full time mechanic, at the main division, for its trucks. The Company allowed its employees to repair their cars, or have them repaired, at this garage, even during working hours. Sometimes such repairs were made by the Company mechanic, sometimes by the mechanic and the employee, and sometimes just by the employee.

" At the split division there was no garage. At least one employee at that division, who held a job similar to the decedent's, had, prior to March 1, 1959, repaired his car at that division on a number of occasions, both inside and outside the carpentry shop. On two such occasions, a supervisor had observed the

employee repairing his car and did nothing. The Tanning Company had not issued any directive to the employees, either oral or written, in any way forbidding them from repairing cars at the split division.

"Many of the employees, including supervisors, washed their cars at the plant; it was a common occurrence.

"Mr. Willard had been an automobile mechanic previous to coming to work for the Tanning Company. His prior experience as a mechanic was one reason he was hired. The Tanning Company was interested in having its mechanics improve their skills as such. The amount of work assigned to Mr. Willard at the plant varied from day to day, so that on some days he could complete his assigned work in less time than on other days. He had, on several occasions prior to March 1, 1959 worked on his car, and the cars of other employees, at the plant. He had not been forbidden to work on his car at the split division or elsewhere.

"It was reasonably to be expected that Mr. Willard would, on occasion during the third shift, do repair work on his automobile at the split division.

"It is found and ruled that Mr. Willard's death arose out of and in the course of his employment."

In addition to the above, the Court granted certain requests of the plaintiff as follows:

"2. Prior to March 1, 1959 it had been customary for employees of Brezner Tanning Company, including said Willard, to work on their own motor vehicles on company premises and this custom was known to those in authority at Brezner Tanning.

"3. Willard's work required him to be skilled in mechanics and any work he performed on his vehicle increased such skill and was of benefit to his employer."

A careful examination of the record discloses that the findings are sustainable. It is elementary that such conflicts as existed in the testimony were for the Court to resolve. *Wujnovich* v. *Colcord*, 105 N. H. 451.

In the case of *Maheux* v. *Cove-Craft Co.*, 103 N. H. 71, upon which the plaintiff relies, we held that "activities of a personal nature, not forbidden, but reasonably to be expected, may be a natural incident of employment, so that injury suffered in the course of such activities is compensable." *Id.*, 74; see also, *Whitham* v. *Gellis*, 91 N. H. 226, 227.

Clearly, the record warranted a finding that the activity of a personal nature, in which Willard was engaged when he met his death, was not forbidden and was reasonably to be expected. Since this is so, it could also fairly be found that incidental to, and inextricably interwoven into the fabric of his employment, was the risk that in working on his car he might be injured. It therefore could be determined that the injury arose out of his employment. *Maheux* v. *Cove-Craft Co.*, *supra*, 74; *Walter* v. *Hagianis*, 97 N. H. 314; see 1 Larson, Workmen's Compensation Law, *s.* 6.00.

The deceased was where he was supposed to be at a time when he was supposed to be there. *Argroe* v. *Marinaccio*, 63 N. J. Super. 438; 1 Larson, Workmen's Compensation, *s.* 27.31(b), *p.* 452.47. He was not required to remain idle during slack work periods. *Penzara* v. *Maffia Bros.*, 307 N. Y. 15. It could further be found that it was to the advantage of the employer Tanning Company that Willard improve his skill as a mechanic by working on his car and that he maintain it in good running condition to make the half mile trip from the split division section where he worked to the main plant to get spare parts for company machinery when necessary. In short, a conclusion that what he was doing was to the mutual advantage of the defendant employer and himself was warranted. *Argroe* v. *Marinaccio supra*; 99 C. J. S., Workmen's Compensation, *s.* 222, *pp.* 744, 745.

The defendants attempt to distinguish the *Maheux* case by such factors as: (1) Maheux was using his employer's dangerous power-driven equipment and was injured because the equipment was defective; (2) he was making a checkerboard when injured, and since the employer's business was the manufacture of toys, this was expectable; (3) evidence that the employer knew of Maheux's activities was stronger than evidence of the employer's knowledge of Willard's activities; (4) it was reasonably understood that Maheux was to become familiar with the operation of various machines in the plant, while the Tanning Company had no interest in Willard's working on his own automobile.

In the face of the Court's sustainable findings, however, we do not believe that any of these distinctions are determinative. We have said in *Maheux* that "The controlling issue is whether the activity is reasonably expectable, so as to be an incident of the employment, and thus in essence a part of it." *Id.*, 74.

On the Court's findings, which are supported by the record,

the plaintiff's case meets this test, and it follows that the defendants' exceptions to the findings and rulings that the accident arose "out of and in course of" the deceased's employment ( RSA 281:2 III ( supp ) ) are overruled.

Although the issue is not raised by the transferred case both parties wish us to decide whether the plaintiff is entitled to interest upon the compensation benefits awarded her for her husband's death. Since this question will ultimately arise in this case we shall consider it. The plaintiff relies upon RSA 524:1-b ( supp ) which reads as follows:

"[New] Interest from date of writ. In all other civil proceedings at law or in equity in which a verdict is rendered or a finding is made for pecuniary damages to any party, whether for personal injuries, for wrongful death, for consequential damages, for damage to property, made for pecuniary damages to any party, whether for personal injuries, for wrongful death, for consequential damages, for damages to property, business or reputation, or for any other type of loss for which damages are recognized, there shall be added by the clerk of court to the amount of damages interest thereon from the date of the writ or the filing of the petition to the date of entry of final judgment, even though such interest brings the amount of the verdict or findings beyond the maximum liability imposed by law. "

When the Legislature passed this amendment ( Laws 1963, *c.* 293 ) we had already held unequivocally in *Latour* v. *Producers Dairy*, 102 N. H. 5, decided February 27, 1959, that no interest was recoverable on workmen's compensation payments and that the general statute relating to interest on judgments for damages ( RSA 524:1 ) was inapplicable to such proceedings. The opinion rested upon the axiomatic principle that the workman's rights are both created and measured by statute ( *Desrosiers* v. *Company,* 98 N. H. 424 ) and that the Workmen's Compensation Law ( RSA ch. 281 ) contained no provision expressed or reasonably to be implied that interest was to be allowed.

RSA ch. 281 contains long, detailed and meticulous definitions of plaintiff's rights and numerous amendments have been made since 1959. We pointed out specifically in *Latour* that if the Legislature desired that interest be allowed in compensation awards the remedy rested in their hands alone. *Latour* v. *Producers Dairy, supra,* 8. See *Prassas* v. *Company*, 100 N. H. 209, 211. In the face of this holding the Legislature has not seen

fit since to make any change in the Workmen's Compensation Law in regard to interest.

The legislative history of the amendment to the statute for interest on judgments for damages (Laws 1963, *c*. 293; RSA 524:1-b (supp)) shows that it was passed because in the libel case of *Chagnon* v. *Union-Leader Co.*, 104 N. H. 472, decided April 30, 1963, we held that no interest was allowable from the date of the writ on a judgment recovered in a tort case of this nature. The prompt legislative reaction to this decision was that they did intend interest to be recovered from the date of the writ for damages awarded in such cases. However, neither in the legislative proceedings prior to its passage, nor in Laws 1963, *c*. 293 was any mention made of the Workmen's Compensation Law or the "compensation for death" or "benefits" or "payments" as referred to in RSA ch. 281, *ss*. 22, 30, 33. Nor as previously stated has any provision been made in chapter 281 relative to payment of interest.

In all the circumstances we hold that RSA 524:1-b (supp) is inapplicable here and that the plaintiff is not entitled to interest on the compensation awarded her as a result of her husband's death. *Latour* v. *Producers Dairy*, 102 N. H. 5.

The order is

> *Defendants' exceptions overruled; remanded.*

All concurred.