Merrimack
No. 7491

NORMA L. HEINZ, WILLIAM HEINZ, JR.
AND
KRISTON HEINZ
AS DEPENDENTS OF WILLIAM F. HEINZ

v.

CONCORD UNION SCHOOL DISTRICT
AND
FIDELITY AND CASUALTY COMPANY OF NEW YORK

March 31, 1977

*Perkins & Brock* and *Frederick E. Upshall, Jr.,* of Concord (*Mr. Upshall* orally) for the plaintiffs.

*Wadleigh, Starr, Peters, Dunn & Kohls,* of Manchester, and *James S. Yakovakis* (*Mr. Yakovakis* orally) for the defendants.

BOIS, J. This is an appeal from the affirmance by the superior court of a decision of the deputy commissioner of labor denying workmen's compensation benefits to the plaintiffs who are dependents of the decedent, William Heinz. RSA ch. 281. The sole issue is whether Mr. Heinz' death arose "out of and in the course of" his employment, and is thereby compensable. RSA 281:2 V (Supp. 1975). All questions of law were reserved and transferred by *Keller,* C.J.

The facts are essentially undisputed and may be summarized as follows. Mr. Heinz was a physics teacher under contract at Concord High School. He was not obligated to chaperone school dances but teachers were expected to give fully of their services and participate to a reasonable extent in school activities. After he and his wife had accepted the invitation of certain students to chaperone a dance at the end of the 1974 school year, the dance received school authorization. On the day of the dance, Mr. Heinz

left the school after the completion of classes at about 3 p.m., and proceeded first to a private after-school social gathering given by a teaching colleague. Except for a trip to his doctor, he remained at the party until early evening, and consumed several glasses of beer. According to the testimony of his fellow teachers, his drinking produced no outward signs of intoxication. At about 7:30 p.m., he left the party to return home (a distance of five miles) in order to change clothes and pick up his wife, and then proceed the ten miles to the school. On his way home, the motorcycle which he was driving failed to negotiate a bend in the road; he was thrown from the vehicle and killed. There was evidence that at the time of the accident the road was wet from rain, and marked by holes, bumps, dips and scattered sand. The trial court gave no weight to the result of a blood test given the decedent (it was not shown that the needle used in the procedure was free from contamination), and ruled that intoxication had not been established. *See* RSA 281:15. It did find however that the accident was caused by the negligence of the decedent in the operation of his motorcycle.

Benefits were denied on the ground that death did not arise out of and in the course of the decedent's employment. In reaching this conclusion, the court relied on the facts that death occurred "while Mr. Heinz was on his way home from a purely social gathering," and that the risk of riding a motorcycle over a bumpy road was a risk "of which his employer had no knowledge."

■ To be compensable under the workmen's compensation law, the injury must arise "out of and in the course of employment." RSA 281:2 V (Supp. 1975). The injury must result from " 'the conditions and obligations of the employment' and not merely from the 'bare existence of the employment.' " *Labonte v. Nat'l Gypsum Co.*, 110 N.H. 314, 317, 269 A.2d 634, 636 (1970). Many jurisdictions have adopted a "coming and going" rule, to the effect that, for an employee having fixed hours and place of work, going to and from work is generally covered only on the employer's premises. *See* 1 A. Larson, The Law of Workmen's Compensation § 15.11, at 4-3 (1972). This court has noted that this "so-called rule has proved to be of doubtful utility and is riddled with various exceptions." *Brousseau v. Blackstone Mills*, 100 N.H. 493, 494, 130 A.2d 543, 545 (1957); *see Henderson v. Sherwood Motor Hotel*, 105 N.H. 443, 445, 201 A.2d 891, 894 (1964); *United States Fidelity & Guar. Co. v. Gagne*, 103 N.H. 420, 174 A.2d 406 (1961). In this jurisdiction the question is simply whether the cause of the

injury can properly be considered a hazard of the 'employment. *Id.; Brousseau v. Blackstone Mills supra; Manchester v. Huard,* 113 N.H. 81, 301 A.2d 719 (1973).

■ We have recognized, with other jurisdictions, that the ordinary perils of travel between home and the place of employment are not properly considered as hazards of employment, and injuries arising therefrom are thus ordinarily noncompensable. *Henderson v. Sherwood Motor Hotel,* 105 N.H. 443, 201 A.2d 891 (1964); *Kyle v. Greene High School,* 208 Iowa 1037, 226 N.W. 71 (1929); 1 A. Larson, *supra* at § 15.11. A different conclusion is reached, however, "when a peril which arises out of the employment overtakes the employee when he is returning home after employment beyond the usual working hours, as the result of special duties which thus subject him to special travel risks." *Henderson v. Sherwood Motor Hotel, supra* at 445, 201 A.2d at 894; *see Kyle v. Greene High School supra; In re Papanastassiou's Case,* 362 Mass. 91, 284 N.E.2d· 598 (1972); *Jonas v. Lillyblad,* 272 Minn. 299, 137 N.W.2d 370 (1965); *Ricciardi v. Damar Products Co.,* 45 N.J. 54, 211 A.2d 347 (1965). The principle is the same when a peril which arises out of the employment overtakes an employee when he is traveling from home to his place of employment in order to perform a special duty. *See* 1 A. Larson, *supra* at § 16.10.

Workmen's compensation law has been found to grant coverage to a chemist undertaking a special evening trip in order to conduct further work on a chemical experiment begun during regular working hours, *In re Papanastassiou's Case supra;* to a hotel maintenance man making a special evening trip to the hotel to turn up the furnace and boiler during wintry weather, *Jonas v. Lillyblad supra;* to an employee returning home from a company-sponsored picnic designed in part to further the company's own interests, *Ricciardi v. Damar Products Co. supra;* and to a school janitor making a special evening trip to the school to aid preparations for a school basketball game, *Kyle v. Greene High School supra.*

■ As a result of employment, obligations may arise which require an employee to travel beyond the normal time and space limits of his employment. Travel under these obligations may be protected by what is known as the "special errand rule." "When an employee . . . makes an off-premises journey which would normally not be covered under the usual coming and going rule, the journey may be brought within the course of employment by the

fact that the trouble and time of making the journey, or the special inconvenience, hazard, or urgency of making it in the particular circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself." 1 A. Larson, *supra* at § 16.10, at 4-86 to 4-88.

■ The chaperoning duties in the instant case may properly be characterized as a special duty or errand, and subjected the decedent to special travel risks. In reaching this conclusion, we consider the undisputed evidence that chaperoning was an irregular event, that duties occupying evening weekend hours were not routine, and that evening travel often presents special hazards. *See* 1 A. Larson, *supra* at § 16.11.

The circumstances of the instant case are not unlike those in *Binet v. Ocean Gate Board of Education,* 90 N.J. Super. 571, 218 A.2d 869 (1966), in which the employee teacher was killed in an automobile accident following his noncompulsory but expected attendance at a PTA meeting and a visit to a tavern en route home. The *Binet* court held that the meetings constituted the performance of a special service, presented an exception to the going and coming rule, and entitled the employee to portal-to-portal coverage. *But cf. Kammeyer v. Board of Educ.,* 393 S.W.2d 122 (Mo. App. 1965). In *Horvath v. Industrial Commission,* 26 Wis. 2d 253, 131 N.W.2d 876 (1965), the teacher employee was required as part of her duties to advise and supervise a student extracurricular activity. After spending the afternoon in preparing an evening banquet for the parents of the students, she was injured on her way home to bathe and change. The court held the injury arose out of and in the course of the employment.

It remains for us to determine whether, at the time of the accident, the decedent Heinz should be deemed to have been on the way to his employment, notwithstanding that his immediate destination at the time was not his place of employment, but his home.

■ Professor Larson has observed that the cases addressing this problem are few. 1 A. Larson, *supra* at § 16.10, at 4-86–87 n.8. We have found no helpful precedents. *Cf. Charak v. Leddy,* 23 App. Div. 2d 437, 261 N.Y.S.2d 486 (1965). However, we are mindful that "[w]e are here concerned with construction of remedial legislation in the light of its recognized purpose to afford to the employee 'a certain and sure remedy applicable to all cases of injury not due to his wilful misconduct.'" *Bolduc v. Somersworth*

*Shoe Co., Inc.*, 97 N.H. 360, 365, 89 A.2d 538, 541 (1952). Accordingly, "[t]he employee can expect a liberal interpretation of when the employment begins or ends . . . ." *Brousseau v. Blackstone Mills,* 100 N.H. 493, 496, 130 A.2d 543, 546 (1957). "It is the judicial obligation to administer the Workmen's Compensation Act liberally." *Binet v. Ocean Gate Bd. of Educ.*, 90 N.J. Super. at 574, 218 A.2d at 871.

■ Ordinarily the place from which the journey to (or from) special duties begins is the home. *Ricciardi v. Damar Prods. Co.,* 45 N.J. at 61, 211 A.2d at 350. However, this is only because the home ordinarily represents a resting place, the exiting from (or return to) which signifies the taking up (or conclusion) of the special duties imposed. Any place which thus serves as such a functional resting place may be equivalent to a "home."

■ For workmen's compensation coverage to exist it is not enough that the employee engaged in special duties is on his way from (or to) a resting place. The conditions under which the employee leaves (or returns to) the resting place must have a principally work-connected character. The relevant conditions are those indicating the employee's space and time relationship to his employment duties. With respect to spatial conditions, it must be shown that the resting place is within reasonable physical proximity of the place of employment, and thus that the risks attending the journey between the resting place and the place of employment are fairly within the range of compensable risks associated with asking the employee to perform special duties. With respect to temporal conditions, it must be shown that at the time the employee leaves (or returns to) the resting place, the limits of time objectively indicate that the employee is expeditiously proceeding to (or from) his special duties. If these requirements are met, the journey from (or to) the resting place is sufficiently related to the special duties imposed to be considered a "hazard of the employment." *Henderson v. Sherwood Motor Hotel,* 105 N.H. at 445, 201 A.2d at 894; *see Allison v. Brown & Horsch Insulation,* 98 N.H. 434, 102 A.2d 493 (1954).

■ We believe these requirements were met in the instant case. The party which the decedent left was within reasonable physical proximity of the school. The risks associated with the journey from the party to the school would not be dissimilar from those ordinarily involved in asking a local employee to return to his place

of employment to perform a special duty. Moreover, objective temporal circumstances imposed a principally work-connected character on the journey from the party. The decedent had only approximately thirty minutes from the time he left the party until the time of the dance; during this half-hour period it was necessary that he travel five miles to his home in order to change clothes and pick up his wife (a wholly work-related trip), and then proceed the ten-mile distance from his home to the school. Obviously, from the moment he left the party the decedent was principally occupied with the business of getting to the school dance.

We conclude that the death of William Heinz arose out of and in the course of his employment.

*Plaintiff's exceptions sustained.*

DOUGLAS, J., did not sit; the others concurred.