Hillsborough
No. 83-331

## New England Telephone Company

v.

## Pauline Ames

April 6, 1984

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester (*Jack B. Middleton* and *James F. Raymond* on the brief, and *Mr. Raymond* orally), for the plaintiff.

*Upton, Sanders & Smith*, of Concord (*Russell F. Hilliard* on the brief and orally), for the defendant.

BATCHELDER, J. The defendant, acting as a union bargaining representative, was injured during negotiations with the plaintiff company, which is also her employer. The sole issue presented in this appeal is whether the defendant's injury arose out of and in the course of her employment, entitling the defendant to workers' compensation benefits. RSA 281:2, V (Supp. 1983). We hold that the injury is compensable.

In 1980, the defendant was an employee of the plaintiff and also served as a bargaining representative of the International Brotherhood of Electrical Workers (the union). On August 15, 1980, the defendant attended a negotiating session in Boston between the union and the plaintiff. At the negotiating session, she was acting solely in the capacity of a union representative and was not performing any duty for which the plaintiff hired her. Pursuant to the existing contract between the plaintiff and the union, the plaintiff was paying the union representatives, including the defendant, "straight-time hourly rate during their normal working hours when attending collective bargaining sessions with Company representatives." As the defendant drew her chair forward to the table during negotiations, she hit her knee against the leg of the table, sustaining an injury. The negotiating session resulted in a new contract which provided for a substantial increase in wages and benefits for union employees.

In decisions dated December 19, 1980, and February 2, 1981, the department of labor ruled that the defendant's injury was compensable. The plaintiff appealed to the Superior Court (*Goode*, J.) which, approving the Master's (*Chester C. Eaton*, Esq.) report, denied benefits to the defendant. This appeal followed.

The workers' compensation law provides that an accidental injury is compensable if it arises out of and in the course of employment. RSA 281:2, V (Supp. 1983). First, the claimant must prove the causal connection between the injury and the employment: that the

injury resulted from a risk to which the employment subjected him or her, and thus arose out of employment. *Maheux v. Cove-Craft Co.*, 103 N.H. 71, 74, 164 A.2d 574, 576 (1960); *see Couture v. Mammoth Groceries, Inc.*, 116 N.H. 181, 183, 355 A.2d 421, 422 (1976). Second, the claimant must show that the injury arose in the course of employment: that the injury occurred within the time and space boundaries of employment, *see Heinz v. Concord Union School Dist.*, 117 N.H. 214, 218, 371 A.2d 1161, 1164 (1977); *United States F. & G. Co. v. Gagne*, 103 N.H. 420, 423, 174 A.2d 406, 408 (1961), and during an activity whose purpose was related to employment, *see Hanchett v. Brezner Tanning Co.*, 107 N.H. 236, 238–39, 221 A.2d 246, 247 (1966); *Maltais v. Assurance Society*, 93 N.H. 237, 240, 40 A.2d 837, 839 (1944). *See generally Town of Goffstown v. Morgrage*, 122 N.H. 591, 593, 448 A.2d 385, 386 (1982); 1 A. LARSON, WORKMEN'S COMPENSATION LAW §§ 6, 14 (1982, Supp. 1983).

■ In this case, the issue is whether the activity in which the defendant was engaged when the injury occurred was work-related and whether the injury thus arose in the course of employment, within the meaning of RSA 281:2, V (Supp. 1983). The fact that the defendant was not actually engaged upon the work she was hired to perform does not preclude application of the statute. *See Maltais v. Assurance Society supra.* Rather, injuries which result from the conditions and obligations of employment are compensable, *Heinz v. Concord Union School Dist., supra* at 217, 371 A.2d at 1163, including injuries which occur during an activity of a personal nature, not forbidden and reasonably expected, and a natural incident of employment, *Hanchett v. Brezner Tanning Co. supra.*

Union activities could be classified as personal activities and thus this case could be analyzed under that formula. However, union activities are not of the same genre as activities previously found to fall into the category of those "incidental to employment." *See Hanchett v. Brezner Tanning Co., supra* at 238–40, 221 A.2d at 247–48 (fireman-mechanic was repairing own automobile during working hours at place of business); *Maheux v. Cove-Craft Inc., supra* at 74–75, 164 A.2d at 576–77 (during lunchtime, employee was operating machine of employer, who was toy manufacturer, to fashion checkerboard for own use); *Maltais v. Assurance Society, supra* at 241–42, 40 A.2d at 840 (employee was using compressed air hose to clean clothes and for horseplay); *Bernier v. Mills*, 93 N.H. 165, 167–68, 37 A.2d 5, 6–7 (1944) (while passing a cloth-shearing machine, the employee, out of curiosity, placed hand on cloth); *Whitham v. Gellis*, 91 N.H. 226, 227, 16 A.2d 703, 704 (1940) (filling-station attendant, while on duty, crossed highway to make a purchase for personal use and was struck by a car on return).

■■ The better analysis would be that a union activity may be "in the course of employment" if it is of mutual benefit to the employee and employer. *See Caterpillar Tractor Company v. Shook,* 313 N.W.2d 503, 507 (Iowa 1981); *Mikkelson v. N. L. Industries,* 72 · N.J. 209, 213, 370 A.2d 5, 7 (1977); *Repco Products Corp. v. Workmen's Comp. App. Bd.,* 379 A.2d 1089, 1092 (Pa. Commw. Ct. 1977); *Kennedy v. Thompson Lumber Co.,* 223 Minn. 277, 280–81, 26 N.W.2d 459, 461 (1947); *see also Hanchett v. Brezner Tanning Co. supra* (activity of employee was to the mutual advantage of employer and employee). This standard is consistent with our liberal interpretation of the phrase "in the course of employment." *See Newell v. Moreau,* 94 N.H. 439, 441, 55 A.2d 476, 478 (1947). In determining whether a union activity is of mutual benefit to employer and employee, the court must examine the circumstances of each case. *See generally* 1A A. LARSON, WORKMEN'S COMPENSATION LAW § 27.33 (1982, Supp. 1983).

In this case, the defendant was negotiating solely on behalf of the union. Her purpose, in participating in the negotiating session, was to advance the union's position and obtain increased wages and benefits from the plaintiff. However, the negotiation of and the agreement on a labor contract are activities of mutual benefit to the employer and employee. The existence of a labor contract plays a significant role in preventing industrial strife and unrest. It also promotes the uninterrupted operation of an enterprise. *Mikkelson v. N. L. Industries, supra* at 217, 370 A.2d at 9; *Salierno v. Micro Stamping Co.,* 136 N.J. Super. 172, 177, 345 A.2d 342, 344 (1975), *aff'd,* 72 N.J. 205, 370 A.2d 3 (1977). Such consequences of negotiations are of benefit to the employer. *Id.; accord Caterpillar Tractor Company v. Shook supra* (grievance procedure contributes to industrial peace which benefits employer); *Herndon v. UAW Local 3,* 56 Mich. App. 435, 438, 224 N.W.2d 334, 335 (1974) (employer has interest in providing grievance process to resolve labor disputes in an orderly manner).

■ Therefore, we hold that the activity of the defendant was of mutual benefit to herself and to the plaintiff, and thus arose in the course of employment. In so holding, we address only the circumstances of this case. We recognize that the benefit of union activity to an employer may, in some cases, be so tenuous that the activity will not be "in the course of employment." *See Salierno v. Micro Stamping Co., supra* at 178, 345 A.2d at 345 (distinguishing between bilateral and unilateral union activity); *Cimato v. McGrath Corp.,* 45 A.D.2d 797, 797, 357 N.Y.S.2d 166, 167 (1974); *Pacific Indemnity Co. v. Industrial Accident Com'n,* 27 Cal. App. 2d 499, 503–04, 81

P.2d 572, 574–75 (1938). However, we need not draw that line in this case.

*Reversed and remanded.*

SOUTER, J., concurred separately; the others concurred.

SOUTER, J., concurring separately: I concur in the majority opinion and wish only to emphasize the significance of one factual element of the case. I agree that the union activity here is not a personal activity within the holding of *Whitham v. Gellis*, 91 N.H. 226, 16 A.2d 703 (1940) and the cases that have followed it. Since the holding in *Hanchett v. Brezner Tanning Co.*, 107 N.H. 236, 221 A.2d 246 (1966) rested on the concept of mutual advantage as an alternative basis for the decision, I agree it is appropriate to look to that doctrine under its now common label of mutual benefit.

As the majority opinion points out, the concept of mutual benefit cannot be applied to union activity without deciding which facts should be emphasized over others. Viewed alone, bargaining is an attempt to obtain an advantage at the expense of an opponent, and it does not easily fit the mutual benefit mold. If the process of bargaining is nonetheless seen as a step toward reaching an agreement fostering industrial peace and stability, the mutuality of its benefit is apparent. The majority chose the latter analysis in reliance on earlier cases calling for a broad reading of "course of employment."

In this case, I believe there is further support for the finding of mutual benefit, in the plaintiff's agreement to pay employees including the defendant when they bargain during normal working hours. I would hold that this explicit agreement to compensate an activity is a good reason to find mutual benefit from its performance. If employers recognize that such agreements are significant under the mutual benefit doctrine, there may be less litigation in cases like this one.