Rockingham
No. 85-288

DONALD MURPHY

v.

TOWN OF ATKINSON & a.

October 3, 1986

*Wiggin & Nourie*, of Manchester (*L. Jonathan Ross* and *Kelly M. Bird* on the brief, and *Ms. Bird* orally), for the plaintiff.

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*Richard E. Galway* and *Douglas N. Steere* on the brief, and *Mr. Galway* orally), for the defendants.

SOUTER, J.   The plaintiff appeals an order of the Superior Court (*Gray*, J., acting on the recommendation of a Master, *Mayland H. Morse*, Esq.) upholding a decision of the department of labor to deny

the plaintiff's claim for workers' compensation benefits. RSA 281:37. We affirm.

At all relevant times, the plaintiff was a member of the volunteer fire department in the town of Atkinson. The defendants are the town and its workers' compensation insurance carrier. On the evidence presented, the master was entitled to find that the Atkinson Fire Department and a group known as the Atkinson Firefighter's Association have a common membership, although each organization has separate officers, funds and functions. The department is responsible for firefighting and training; the association sponsors fund raising and social events, sometimes donates equipment to the department and sometimes advances funds for equipment and training expenses. "By-laws" of the department, reflecting the relationship between the two organizations, provide that the president of the association will be a member of the department's membership committee and obligate department and association members to join in any fund-raising efforts to the extent that they reasonably can.

It may be assumed that the camaraderie among members and their families at the association's social gatherings improves the morale of the department. One such gathering occurred on August 26, 1984, when the association sponsored and paid for a picnic at a private camp in Atkinson. About half of the association's members attended with their families, as did others who were neither members nor relations of members. The members brought firefighting equipment to the scene, in case a call came during the picnic. Although there was no firefighting instruction, some of the newer members of the department were taught to unroll hoses, which were then used to fill the camp's swimming pool.

The only planned activities were eating, swimming, water polo and a softball game, in which the plaintiff played. After jumping to make a high catch he injured his knee, for which injury he seeks workers' compensation benefits under RSA chapter 281. The question originally before the labor department, and subsequently before the superior court, was whether the injury arose "out of and in the course of employment," within the meaning of RSA 281:2, V (Supp. 1985). Each tribunal answered no.

In this appeal, two preliminary matters demand attention. The first arises from disagreement about the application of the rule, reflected in *Charles & Nancy, Inc. v. Zessin*, 118 N.H. 556, 391 A.2d 880 (1978), that a workers' compensation appeal before the superior court must be confined to the issues raised before the labor department. *Cf. Feuerstein v. Gilmore*, 127 N.H. 715, 506 A.2d 327 (1986) (admissible evidence not so limited). Counsel for the plaintiff claims

that because the parties stipulated at trial that the sole issue was whether the injury arose out of and in the course of employment under RSA 281:2, V (Supp. 1985), it was error for the master to consider the provisions of RSA 281:2, IV (Supp. 1985), which identify the employer of a public employee and confine the duration of public employment to the period in which "official duties" are performed. The short answer to this contention is that when the parties stipulated that the issue was whether the injury arose "out of and in the course of employment," they did not purport to limit the court's consideration to RSA 281:2, V (Supp. 1985) in deciding how the quoted phrase should be applied. The court was at liberty to examine other provisions of the workers' compensation law in resolving the issue, and it was therefore entirely proper to consider subsection IV when defining the scope of "employment" under subsection V.

The second and closely related preliminary matter is disagreement over the identity of the plaintiff's employer, an issue of some significance in determining the scope of the official duties that, in turn, limit the scope of covered employment under subsection V. In order to identify the plaintiff's employer, the master applied the plain language of subsection IV, that "[e]mployee, with respect to public employment, means every person in the service of . . . any political subdivision [of the State] while performing his official duties. Every person who is a . . . volunteer . . . member of a fire . . . department . . . shall be deemed, for the purpose of this chapter, to be in the employment of the political subdivision of the state where the department is organized." He thus found that the plaintiff, in his capacity as a firefighter, was an employee of the Town of Atkinson.

The plaintiff argues that the master took too narrow a view. His brief is replete with arguments that the fire department and the association are so far indistinguishable that the court should have regarded them as one entity, with the results that the plaintiff would be treated as an employee of the association as well as of the department and that the association's activity would be treated as a touchstone of the scope of the plaintiff's employment.

In pressing this point, the plaintiff places great stress on a document entitled "By Laws Governing the Operation of the ATKINSON FIRE DEPARTMENT," which recites that "the residents of the Town of Atkinson" have "ordained" its provisions. These "by-laws" provide for the organization, membership and some of the responsibilities of the department and the association, respectively, and we have referred to them above. The plaintiff failed to demonstrate, however, that the town actually had "ordained" the relationship between the department and the association. The plaintiff's

counsel expressly disclaimed any representation that the by-laws had been "accepted by the town," and suggested only that the master might infer that the fire department had "adopted" them..

■ Consequently, the superior court could not infer from the "by-laws" that the town had recognized association activity as an element of employment. Moreover, the master had evidence from which he could find as he did, that the department and the association were separate functional entities, and that for purposes of RSA chapter 281 the plaintiff was an employee of the town, not an employee of the association. There is no apparent error in these findings.

■■ We turn now from these threshold issues to the challenge to the trial court's conclusion that the injury did not arise out of and in the course of the plaintiff's employment by the town. While the town did not employ the plaintiff to go to picnics or play softball, under longstanding case law in this jurisdiction, a workers' compensation claimant will not be denied coverage merely because at the moment of injury he was not engaged in the duties he had been specifically hired to perform. *See Maltais v. Assurance Society*, 93 N.H. 237, 40 A.2d 837 (1944). To be sure, the requirement that a compensable injury arise out of and in the course of employment imposes an obligation to prove that the injury is related to employment in terms of time, space and subject matter. But this demand is construed liberally to give the broadest reasonable effect to the remedial purpose of the compensation legislation. *Id.* at 240, 40 A.2d at 839. The result has been a series of cases expressing expansive interpretations of the statutory criteria for coverage.

■ The body of law created by these cases is not as unruly as it seemed before the decision of *New England Telephone Co. v. Ames*, 124 N.H. 661, 474 A.2d 571 (1984), a case which synthesized the standards previously developed for determining whether peripheral or ancillary activities are within the scope of employment. Thus a claimant must prove (1) that the injury arose out of employment by demonstrating that it resulted from a risk created by the employment, *Maheux v. Cove-Craft Co.*, 103 N.H. 71, 74, 164 A.2d 574, 576 (1960); and (2) that the injury arose in the course of employment by demonstrating that (A) it occurred within the boundaries of time and space created by the terms of employment, *Heinz v. Concord Union School Dist.*, 117 N.H. 214, 218, 371 A.2d 1161, 1164 (1977); and (B) it occurred in the performance of an activity related to employment, which may include a personal activity if reasonably expected and not forbidden, *see Hanchett v. Brezner Tanning Co.*,

107 N.H. 236, 238–39, 221 A.2d 246, 247 (1966); *Maheux v. Cove-Craft Co., supra* at 74, 164 A.2d at 576, or an activity of mutual benefit to employer and employee, *see Hanchett v. Brezner Tanning Co., supra* at 239, 221 A.2d at 248; *N.E. Telephone v. Ames, supra* at 662–63, 474 A.2d at 573.

■ The master found that the plaintiff had not satisfied these criteria. His findings are entitled to stand, for a review of the record indicates that the plaintiff has failed to demonstrate that they lack support in the evidence, *see Taylor v. Davidson Rubber Co.*, 122 N.H. 428, 432, 445 A.2d 1119, 1121 (1982).

■ Apropos of the first criterion, the softball injury cannot reasonably be said to have been within a risk created by the town's employment of the plaintiff as a firefighter. At the time he was hurt, the plaintiff was not engaged in firefighting, was not on the employer's premises, was not subject to the employer's control, was not expected by the employer to be engaging in the game and was not injured by or while using the employer's equipment. *See Maheux v. Cove-Craft Inc., supra* at 74, 164 A.2d at 576 (discussion of risk factors). It is difficult, therefore, to see how this softball injury could fall within the risk of firefighting employment.

This conclusion is consistent with a case relied upon by the plaintiff, *Nadeau v. Town of South Berwick*, 412 A.2d 392 (Me. 1980), where a town employee was held to be covered for an injury sustained during a competitive muster event in which one fireman used a hose to pour water into a coffee can held by a teammate sliding down a chute. The court ruled in favor of the claimant because the department had called for a team to attend musters and perform such antics, which involved some incidental training in the use of equipment. The case is distinguishable from the one before us, however, because the injury was sustained in a training-related accident.

■■ Nor did the injury occur within the boundaries of the employment's time and space. Obviously, when employment is subject to call, consisting of service wherever and whenever needed, time and space criteria cannot be applied in the conventional manner with reference to a fixed place of work and fixed hours of employment. But although employment may occur anywhere and anytime, it does not occur without a call or a requirement to perform some activity integrally related to the object of the employment relationship, *i.e.*, firefighting in this case. *See Heinz v. Concord Union School Dist.*, 117 N.H. at 218–19, 371 A.2d at 1164 ("special errand" rule dispensing with normal time and space requirements

demands that the employee's activity be "integral" to the customary service to the employer). Because one could not reasonably say that the plaintiff's wholly voluntary attendance and participation in a pick-up ball game was integral to the service of firefighting, the injury cannot be seen as occurring within the time and space associated with the employment.

On like reasoning, the softball injury cannot be seen as satisfying the third and most generally articulated criterion, as arising from an activity related to the employment. The softball game was not the sort of personal activity on company time that was found related in *Hanchett*, where the employer had permitted an employee, hired as a mechanic, to perform repair work on his own car during slack periods at work; the plaintiff here was not hired as a ballplayer. Nor do we think the game can be seen as providing a mutual benefit comparable to the benefits of collective bargaining recognized in *New England Telephone Co. v. Ames*, 124 N.H. 661, 474 A.2d 571. Benefit is a matter of degree, and the master was not acting unreasonably when he implicitly held that good spirits encouraged by wholly voluntary games and picnics, held without any sponsorship of the employer, are simply too vague and attenuated a benefit to satisfy the *New England Telephone* rule.

In sum, we find no error in the master's conclusion that the plaintiff had not satisfied the criteria synthesized in *New England Telephone*. We do not, therefore, reach the further question of whether the provision of RSA 281:2, IV (Supp. 1985) confining the employment status of a public employee to the period that he is "performing his official duties" must be taken to limit covered activities in public employment more narrowly than the *New England Telephone* criteria would do generally. *Cf.* RSA 281:2, III (Supp. 1985) (no such "official duty" limitation applicable to private employees); *see* RSA 281:2, VII(2) (Supp. 1985) (providing for computation of benefits for firefighters, *inter alia*, "if injured while on duty").

Nor do we reach the merits of the plaintiff's further argument that the master should have ruled in his favor on the basis of special standards for extending coverage to certain injuries occurring at social or recreational activities. The plaintiff would have us adopt the special rules articulated by Larson:

> "Recreational or social activities are within the course of employment when
>> (1) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or

(2) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or

(3) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life."

1A A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 22.00 (1985).

The record in this case does not, however, present an occasion to decide whether to adopt the rules thus summarized. As the plaintiff recognizes, subsection (1) would obviously be inapplicable. Subsection (2) would not apply, because our preceding discussion makes it clear that the town could not be found to have included attendance at the picnic within the required services of a firefighter, or otherwise to have compelled attendance. And subsection (3) would be inapplicable because the town's only alleged benefit from the picnic is good morale, albeit not in this case, and good morale, standing alone, would be an insufficient benefit to the employer to justify classifying a recreational activity within the scope of employment for the purpose of workers' compensation coverage.

The plaintiff has demonstrated no error.

*Affirmed.*

All concurred.