**Ola Mae JONES, Plaintiff/Appellee,**

v.

**The HARTFORD ACCIDENT & INDEMNITY COMPANY, Defendant/Appellant.**

Supreme Court of Tennessee, at Jackson.

May 20, 1991.

John D. Burleson, Charleyn S. Arnold, Jackson, for appellant.

T.J. Emison, Jr., Alamo, for appellee.

OPINION

ANDERSON, Justice.

In this worker's compensation action, the trial court awarded permanent total disability benefits, medical expenses, and the cost of future medical care, finding that the employee's emotional disability was caused by an injury by accident arising out of and in the course of her employment. The employer's insurer ("Hartford") appeals, contending that the evidence preponderates against the trial court's findings. We disagree and affirm.

## FACTS

Chester County Sportswear is a clothing manufacturing company owned by Norman Katz ("Katz"), a resident of Newton, Massachusetts. At the time of the plaintiff's injury, Chester County Sportswear's employees worked pursuant to a union contract between the plant and the Amalgamated Clothing and Textile Workers Union, AFL–CIO.

The plaintiff, Ola Mae Jones ("Jones"), had been employed by Chester County Sportswear for twenty-three years as a quality control inspector, and also held the position of union chairperson. As the union chairperson, it was Jones' duty to listen to and evaluate the problems of workers at the factory, and to pursue the resolution of appropriate problems through the Union's grievance procedures. Because of a dispute some years before, Katz had developed great antagonism for the union's business manager, Gary Surratt ("Surratt"), and refused to speak directly with him. As a result, Jones customarily conveyed messages between Katz and Surratt when Katz visited the plant.

During the months preceding Jones' injury, certain employees at Chester County Sportswear had become dissatisfied with the union. Petitions were circulated by these employees seeking to have the union decertified.

It was in this atmosphere that, at approximately 7:00 a.m. on January 8, 1987, Jones reported to work. At 7:30 a.m., she "clocked out" and off of company time and "clocked in" on union time. In town, Katz was circulating through the plant talking with employees when he came upon Jones conversing with four other employees at a location which was somewhat distant from her workstation. Jones says Katz yelled at her, asking whether she was on union time or company time. Katz says he spoke normally. Both agree Jones responded that she was on union time, and that they then conversed normally for a time.

A regularly scheduled union management meeting was held later that morning at approximately 10:30 a.m. between the plant manager, Judy Clayton, Surratt, and Jones. At that meeting Surratt complained of Katz's questioning of Jones about whether or not she was on union time. After the meeting, Judy Clayton told Katz about Surratt's complaint. Katz responded: "Let's get them in here," and told Clayton to call Jones to Clayton's office. After Jones arrived, a meeting was held, attended by Jones, Katz, Clayton, Wayne Keller (the plant's director of manufacturing), and Doris Melton (the plant's personnel director). During the meeting, Keller sent Melton to locate Surratt and Keller then left to talk to Surratt. As a result, neither Keller nor Melton heard all that transpired.

Everyone present at the meeting testified at trial. Based upon this testimony, there is no dispute that Katz told Jones to convey a message to Surratt: That Katz, as owner of the plant, was well within his rights to ask Jones whether or not she was on union time. It is also undisputed that Katz was very upset by Surratt's comment, that Katz punctuated his conversation with the word "damn" ten times, and that he either pointed to or banged on the desk at least once to emphasize his strong feelings about the matter.

The witnesses differ, however, about whether Katz was angry with Jones. Jones testified that Katz "was using profanity and banging on the table," and denied that Katz had stated that he was not angry with her, but rather with Surratt. All of the management witnesses testified on behalf of their employer, to the effect that Katz had clearly told Jones that he had no dispute with her, but rather was upset only with Surratt. Moreover, Katz and his witnesses insist that while he was "highly upset" and "very concerned," he was not "angry."

It is undisputed that within minutes after this meeting, Jones began to feel weak and passed out. Other employees came to her aid, and Jones awoke in the bathroom in great emotional distress. Jones was treated later that day by Dr. Oscar M. McCallum, who was of the opinion that Jones could return to work the next day. However, Jones was subsequently seen by Lorne A. Semrau, Ph.D. and Arthur M.

Ford, Ph.D., both clinical psychologists, and by Robert Winston, M.D., a general practitioner. Dr. Winston testified that Jones now suffers from some degree of permanent injury, and diagnosed her condition as a "severe anxiety neurosis." Based on the history presented to Dr. Winston, which included Jones' report that she had fainted after an abusive confrontation with her employer, Winston testified: "I believe that this indeed was the inciting incident that caused all these problems that she's had since I've been seeing her."

The trial court found

that Ola Mae Jones did in fact suffer a compensable injury, in that her psychological injury was caused by the angry confrontation with her employer's President, and that such confrontation was an acute, sudden and unexpected stress directly related to her employment. The Court further finds that Ola Mae Jones has suffered an injury by accident arising out of and in the course of her employment.

## IN THE COURSE OF EMPLOYMENT

■ Hartford argues that at the time of her injury Jones was not functioning in her capacity as an employee of Chester County Sportswear, but rather was acting in the course of her liaison duties as union chairperson. Hartford characterizes Jones' union duties as entirely separate and distinct from her employment as a quality control inspector at the plant. It follows, so the argument goes, that Jones could not have been injured in the course of her employment with Chester County Sportswear.

Of course, compensable injuries are those caused "by accident arising out of and in the course of employment." Tenn. Code Ann. § 50–6–102(a)(4).

The phrase "in the course of" refers to time and place, and "arising out of" to cause or origin; an injury by accident to an employee is "in the course of" employment if it occurred while he was performing a duty he was employed to do; and it is an injury "arising out of" employment if caused by a hazard incident to such employment.

*King v. Jones Truck Lines,* 814 S.W.2d 23 (Tenn.1991); *Bell v. Kelso Oil Co.,* 597 S.W.2d 731, 734 (Tenn.1980); *Travelers Insurance Co. v. Googe,* 217 Tenn. 272, 397 S.W.2d 368, 371 (1966).

■ The "mutual benefit" test has evolved as an aid in determining when a personal mission of the employee is a sufficient deviation from the course of employment to render an injury non-compensable. On one hand, an employee who is engaged in the pursuit of a personal mission, wholly unrelated to employment, at the time of an injury, is not entitled to workers' compensation benefits. *Shelby Mutual Ins. Co. v. Cates,* 223 Tenn. 442, 446 S.W.2d 682 (1969). On the other hand, "it is clear that as long as [a deviation from the employee's normal job duties] is for the benefit of the employer, it does not matter that it also serves purposes of the employee. *Armstrong v. Liles Construction,* 215 Tenn. 678, 389 S.W.2d 261 (1956)." *Herron v. Fletcher,* 503 S.W.2d 84, 87 (Tenn.1973).

The precise question whether and under what circumstances an employer is liable for injuries to an employee who is engaged in performance of union duties related to the employer's business, has never been addressed in Tennessee. Professor Larson recognizes a modern trend toward finding a mutual employer-employee benefit in the actions of union officers:

It is being increasingly held, ... that an activity undertaken by an employee in the capacity of union office may simultaneously serve the interest of the employer.

1A Larson, *The Law of Workmens' Compensation* § 27.33(c) at 5–414 (1990). "*A foriori,* picketing and other strike activities are not within the course of employment." *Id.,* § 27.33(b) at 5–413. Of course, other union activities could also be classified as *per se* detours from the course of employment.

■ We believe, however, that the better analysis, and that most consistent with our other cases applying a "mutual benefit" test, is that a union activity is "in the course of employment" if the activity is of

mutual benefit to the employee and the employer. *See Scullin Steel Co. v. Whiteside,* 682 S.W.2d 1 (Mo.App.1984) (benefits awarded to union shop steward for injuries sustained in an assault by a co-employee following an argument over a grievance); *New England Telephone Co. v. Ames,* 124 N.H. 661, 474 A.2d 571 (1984) (benefits awarded to union bargaining representative injured during contract negotiations); *Caterpillar Tractor Co. v. Shook,* 313 N.W.2d 503, 507 (Iowa 1981) (benefits awarded to chairman of union grievance committee injured while en route from the union hall, where he had engaged in grievance committee work, to the plant, where he was due to engage in negotiations); *Mikkelsen v. N.L. Industries,* 72 N.J. 209, 370 A.2d 5, 7 (1977) (benefits awarded to employee injured in a parking lot across town from the employer's premises, following a union meeting to vote on a contract offer by management); *Repco Products Corp. v. Workmens Compensation App. Bd.,* 32 Pa.Cmwlth. 554, 379 A.2d 1089, 1092 (1977) (benefits awarded to widow of union shop steward for death resulting from assault by co-worker following work and union-related disputes); *Kennedy v. Thompson Lumber Co.,* 223 Minn. 277, 26 N.W.2d 459, 461 (1947) (benefits awarded to union shop steward injured after leaving employer's premises to call a union agent in order to expedite settlement of a dispute and avert a work stoppage).

Returning to the facts of this case, Jones was summoned pursuant to a direct order from the owner of the plant to receive and pass along a message to the union's business manager. The content of the message related directly to the plant owner's authority to question employees in general, and Jones specifically, about their employment status. We cannot say that the receipt and conveyance of this message to union officials served no purpose of or lacked benefit to the employer. Therefore, we hold that Jones' activity was of mutual benefit to the union and to Jones' employer, and thus, her injury was sustained in the course of her employment.

"We recognize that the benefit of union activity to an employer may, in some cases, be so tenuous that the activity will not be 'in the course of employment.' " *New England Telephone Co. v. Ames, supra,* 474 A.2d at 574. Therefore, we hold only that under the circumstances of this case, the benefit to the employer was sufficient to bring Jones' injury within the course of her employment.

## INJURY BY ACCIDENT

Hartford next argues that the evidence preponderates against the trial judge's finding that Jones suffered an "injury by accident" within the meaning of Tennessee's Workers' Compensation Act. Tennessee Code Annotated, § 50–6–102(a)(4) provides:

"Injury" and "personal injury" means an injury *by accident* arising out of and in the course of employment *which causes* either disablement or death of the employee....

(Emphasis added.) We have held that a mental stimulus may rise to the level of an "injury by accident" only under certain limited circumstances. In *Jose v. Equifax, Inc.,* 556 S.W.2d 82 (Tenn.1977), we stated:

This Court is not inclined to limit recovery to cases involving physical, traumatic injury or to impose any other artificial limitation upon the coverage afforded by the compensation statutes. In proper cases, we are of the opinion that a mental stimulus such as fright, shock or even excessive, unexpected anxiety could amount to an "accident" sufficient to justify an award for a resulting mental or nervous disorder.

*Id.* at 84. Hartford correctly points out, however, that in *Jose* we also recognized that not every stressful event connected with employment will rise to the level of an "accident." This case, Hartford insists, falls within the ambit of *Clevenger v. Plexco,* 614 S.W.2d 356 (Tenn.1981), in which we held that even

if we gave full faith and credit to plaintiff's version of the ... meeting, it would not qualify as the kind of mental stimulus, fright, or shock contemplated in *Jose v. Equifax, Inc., supra.* Rather, the inci-

dent described by plaintiff falls within our observation in *Jose* that under our statutes, "injury by accident" does not embrace "every stress or strain of daily living or every undesirable experience encountered in carrying out the duties of a contract of employment."

*Id.* at 360.

Jones, on the other hand, argues that her case is more analogous to *Black v. State*, 721 S.W.2d 801 (Tenn.1986), and *Cabe v. Union Carbide Corp.*, 644 S.W.2d 397 (Tenn.1983), in which we held that workers' compensation benefits could properly be awarded for injury or death resulting from a heart attack immediately precipitated by "some acute, sudden, or unexpected emotional stress directly attributable to employment." *Cabe, supra*, 644 S.W.2d at 399 (quoting from *Allied Chemical Corp. v. Wells*, 578 S.W.2d 369, 372 (Tenn.1979)).

 The nature and degree of acute, sudden, or unexpected emotional stress is clearly a question of fact. Of course, the plaintiff in a worker's compensation suit has the burden of proving every element of the case by a preponderance of the evidence, *see, e.g., Tindall v. Waring Park Association*, 725 S.W.2d 935, 937 (Tenn. 1987), and the scope of review in this Court on issues of fact is *"de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise." Tenn.Code Ann. § 50–6–225(e). However,

> where the trial judge has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, on review considerable deference must still be accorded to those circumstances.

*Beck v. State*, 779 S.W.2d 367, 368 (Tenn. 1989); *Talley v. Virginia Insurance Reciprocal*, 775 S.W.2d 587, 589 (Tenn.1989); *Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315, 315 (Tenn.1987).

The testimony of the witnesses differs as to the nature and degree of anger and abusiveness manifested by Katz during his confrontation with Jones. However, all agree, at a minimum, that Jones was or-

dered to the plant manager's office immediately after Katz was told of Surratt's complaint; that during the course of a four-minute meeting Katz cursed ten times and either pointed at or pounded the table; and that he was highly upset and very concerned. The preponderance of evidence of an injury by accident in this case turns upon the credibility of the oral testimony of those witnesses. The Chancellor saw and heard each witness, and was in the best position to assess their credibility and weigh their testimony. We find that the evidence does not preponderate against the Chancellor's finding that Jones suffered an "acute, sudden, or unexpected [emotional] stress," and hence an "injury by accident."

## CAUSATION

 Hartford next argues that Jones has not presented sufficient medical proof that she is permanently disabled as a result of her confrontation with Katz.

This Court has consistently held that causation and permanency of a work-related injury must be shown in most cases by expert medical evidence. *Tindall v. Waring Park Association*, 725 S.W.2d 935, 937 (Tenn.1987). However,

> [i]n a workman's compensation case, a trial judge may properly predicate an award on medical testimony to the effect that a given incident "could be" the cause of the plaintiff's injury, when he also has before him lay testimony from which it may reasonably be inferred that the incident was in fact the cause of the injury.

*Id* at 938. *See also Chapman v. Employers Ins. Co. of Alabama*, 627 S.W.2d 122, 123 (Tenn.1981); *Foster v. ESIS, Inc.*, 563 S.W.2d 180, 183 (Tenn.1978); *American Ins. Co. v. Ison*, 538 S.W.2d 382, 385 (Tenn. 1976); *P & L Construction Co., Inc. v. Lankford*, 559 S.W.2d 793, 794 (Tenn.1978); *Lynch v. La Rue*, 198 Tenn. 101, 278 S.W.2d 85, 86 (1955).

Specifically, Hartford argues that the medical testimony of Robert Winston, M.D., a general practitioner, is insufficient to prove causation, because his testimony

was based on the erroneous assumption that the confrontation between Jones and Katz was abusive. Dr. Winston clearly testified that he diagnosed Jones' condition as "a severe anxiety neurosis," and that the incident with Katz "indeed was the inciting incident that caused all these problems that she's had since I've been seeing her." In addition, Dr. Winston testified: "Based on the length of time that I evaluated her, I suspect she sustained some degree of permanent injury."

Since we have held that the evidence does not preponderate against the Chancellor's finding that the confrontation was in fact abusive, this argument is without merit.

### PERMANENT TOTAL DISABILITY

■ Lastly, Hartford argues that the evidence preponderates against the trial court's finding that Jones is permanently and totally disabled. As noted previously, Dr. Winston testified that Jones "sustained some degree of permanent injury."

[W]hen medical evidence establishes permanency, the failure of a medical expert to attribute a percentage of anatomical disability [cannot] justify a denial of compensation if the other evidence demonstrates that an award of benefits is appropriate.

. . . .

Certainly an injured employee should not be denied compensation merely because he is unable to find a witness who can testify to the exact percentage of his disability. That is a question solely for the trial court to determine from all the evidence in the case, including expert and non-expert witnesses [*Crane Enamel Co. v. Jamison*, 188 Tenn. 211, 219, 217 S.W.2d 945, 949 (1948)].

*Corcoran v. Foster Auto GMC, Inc.*, 746 S.W.2d 452, 457 (Tenn.1988).

Applying these rules, we consider whether the evidence preponderates against the trial court's finding that Jones is permanently and totally disabled.

Dr. Arthur M. Ford, a clinical psychologist who renders professional opinions to the state of Tennessee about mental or emotional disabilities of social security applicants, did testify: "I would think eventually she would be able [to return to work]"; however, Dr. Ford also testified: "I think there will be some residual. I think that this will be something that she'll have to live with the rest of her life."

Dr. Semrau, also a clinical psychologist and a vocational expert with the Bureau of Hearings and Appeals of the Social Security Administration, administered a battery of intelligence and personality tests. The test results overwhelmingly demonstrated that Jones' emotional state substantially interfered with her ability to function intellectually, physically, and as an integrated personality.

The personality tests indicated Jones experienced great difficulty being able to arrive at decisions, was disorganized and confused, and lacked normal contact with reality. Dr. Semrau testified:

She demonstrated multiple evidence of distortion of perception and confusion between fact and fantasy. There was evidence of severe depression; depression that I would consider to be clinically significant. There was evidence of marginal contact with reality. And a combination of those two factors usually lead to schizoid features; that is, lack of ability to relate meaningfully to others, inability to engage in decision making efficiently, difficulty being able to differentiate appropriate behavior in given situations,. . . .

Finally, Dr. Semrau testified:

Based upon just the emotional aspects alone on this evaluation, regardless of the other things that I've talked about, she would not be able to sustain substantial gainful activity, in my opinion.

. . . .

I would expect that she would continue to experience symptoms of disorganization, confusion and marginal contact with reality. She did tell me that she continues to hear voices ... that she was having visual hallucinations ..., [and] that she was experiencing suicidal ideation on a regular basis. All that is in keeping

with what I saw on the test results. I would think her prognosis would be considered poor.

The lay proof was consistent with the expert testimony, and confirmed that Jones had not worked since her injury and was unable to otherwise function outside the workplace in a normal manner.

After carefully reviewing this evidence pertaining to the extent of permanent disability, we find that the evidence does not preponderate against the trial court's finding that Jones is permanently and totally disabled.

## CONCLUSION

For the reasons stated herein, we hold that the evidence preponderates in favor of the trial court's finding that Ola Mae Jones suffered an injury by accident arising out of and in the course of her employment, which resulted in her permanent total disability. Consequently, the judgment of the trial court is affirmed. Costs are taxed to the defendant Hartford.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ., concur.