IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

FILED

July 12, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

FOR PUBLICATION

Filed:  July 12, 1999

| | | |
|---|---|---|
| TAMMY DELYN LONG, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | OVERTON  CIRCUIT |
| | ) | |
| | ) | |
| Vs. | ) | HON. JOHN J. MADDUX, JR., |
| | ) | JUDGE |
| | ) | |
| | ) | |
| | ) | |
| TRI-CON INDUSTRIES, LTD., | ) | |
| and HARTFORD ACCIDENT | ) | |
| INDEMNITY COMPANY, | ) | NO.   01-S-01-9708-CV-00176 |
| | ) | |
| Appellees. | ) | |

| | |
|---|---|
| **For the Appellant:** | **For the Appellees:** |
| | |
| Ronald Thurman | Lynn C. Peterson |
| RONALD THURMAN & ASSOCIATES | NORTON & LUHN |
| Cookeville, Tennessee | Knoxville, Tennessee |

# O P I N I O N

| | |
|---|---|
| WORKERS' COMPENSATION SPECIAL | |
| APPEALS PANEL REVERSED; TRIAL | |
| COURT'S JUDGMENT REINSTATED. | ANDERSON, C.J |

We granted this workers' compensation motion for review to determine whether the evidence preponderated against the trial court's finding that the employee sustained a compensable injury to her back arising out of and in the course of her employment. -2-

The trial court determined that the employee suffered 55 percent permanent partial disability to the body as a whole as a result of a back injury arising out of and in the course of her employment with the employer. The Workers' Compensation Special Appeals Panel reversed and dismissed, however, after concluding that the evidence in the record preponderated against the trial court's judgment.

After our review of the record and consideration of the trial court's detailed findings of fact, we conclude that the evidence does not preponderate against the trial court's judgment. Accordingly, we reverse the Panel's judgment and reinstate the trial court's judgment.

## BACKGROUND

Tammy Delyn Long, age 27 at the time of trial, began working for Tri-Con Industries, Ltd., ("Tri-Con"), in March of 1992. Her responsibilities initially involved sewing automotive car seat covers. She then became an inspector for Tri-Con, which required her to lift up to 40 pounds and to stand for considerable periods of time each day. Her work also required repetitive lifting, holding, and twisting of her body during the day.

Long testified that she experienced pain in her hip and the lower left side of her back while working at the factory on Saturday, October 15, 1994. Though she noticed the pain in her back and felt unusually tired, Long did not tell anyone at work about her symptoms or that she had been injured. She could not identify a precise moment when the pain started or a specific motion or movement that caused the pain. She had, however, worked 55 hours that week, tying, inspecting and bundling products, while standing at least 8 hours per day.

Long went home and used a heating pad on her back. Her husband and a friend who had been visiting testified that Long complained about back pain that Saturday evening. On the following Sunday morning, Long's back hurt even worse. Although Long went to church, she was quite uncomfortable due to the back pain. On Monday, Long was unable to go to work due to the stiffness and pain in her low back. Her husband, Paul Long, called Tri-Con and informed Human Resources that Tammy Long was unable to work due to back pain.[1]

On Tuesday, October 17, 1994, Long saw her personal physician, Dr. Kenneth Colburn, a general practitioner. She described her back problem but did not tell him when she had injured it or whether it was at work or at home. Long said that she had injured her back on her left side three or four years earlier and that it occasionally bothered her. Long also testified that she later filled out a disability insurance form that indicated the injury was not work-related. She explained, however, that she initially did not know what exactly had caused the pain she experienced.

Dr. Colburn's initial examination revealed that Long was in severe pain, had only slight leftward and forward flexion, and was unable to lift her left leg more than 10 to 15 degrees. Colburn treated her symptomatically, prescribing muscle relaxants and pain medication. She saw Dr. Colburn again on October 24, 1994 and was in somewhat less pain but experiencing numbness in her leg and an inability to lift her left leg more than 30 or 35 degrees. Colburn ordered an MRI exam, which was performed the next day. The MRI revealed that Long had herniated disks at L4-L5 and at L5-S1.

Long saw Dr. Colburn a third time on October 31, 1994. Although Colburn had initially signed an insurance disability form on behalf of Long that indicated her injury was not due to her employment, Colburn's notes for the October 31 visit reflected that

---

[1] Jan Swallows, a human resources specialist employed by Tri-Con, testified that Paul Long told her on the telephone that "it was nothing [Long] did at work, that she had gotten hurt over the weekend." Paul Long testified he did not recall making this statement and that he did not know how his wife had hurt herself at the time he made this telephone call.

Tammy Long was being treated for "significant disc problems" that were "felt to be work-related." Colburn explained in his deposition that:

> I'd seen her on the 24th [of October] and she was having significant problems, and by that time we'd had further discussions, and in the light of what kind of work she was doing, repetitive bending, picking up, so on, over and over for a period of time, I felt that there was a reasonable chance that work experience could be related to that injury."

Colburn also testified that on March 8, 1995, he had written a letter on behalf of Long, which said in part:

> Tammy Long is a 25 year old female patient whom I saw on two occasions, on 10/18/94 and 10/24/94 for severe back pain. She was an inspector at Tri-Con, a job which involved turning to the right, repetitively bending over picking items up, lifting them, sitting down again. She had done this job for several years. Although I failed to document this historical fact in either of my office notes at that time, I did feel that her type of work had potentially caused her injury or possibly worsened a previous more mild injury.

After being examined by Dr. Colburn, Long provided Tri-Con a note from Colburn stating that Long "is being treated for significant disk problems" and that the condition "is felt to be work-related." Tri-Con then provided a list of three physicians, including Dr. Toney Hudson, an internist who examined Long on November 1, 1994. Dr. Hudson testified in a deposition that his physical examination of Long revealed no "abnormal neurologic deficits." Dr. Hudson testified that he reviewed the MRI, which revealed only a "mildly bulging disk" but no evidence of a herniated disk. According to Dr. Hudson, Long reported to him that her back pain developed while she was in church on October 16. He therefore concluded that the injury was not work-related.

Long then saw a third physician, Dr. William Schooley, on a referral from Dr. Colburn. Schooley, a neurosurgeon, diagnosed Long with a herniated disk at L5-S1. The disk was removed surgically by Schooley on November 21, 1994. Dr. Schooley imposed restrictions against Long bending at the waist or lifting 25 pounds frequently or 50 pounds infrequently. He concluded that Long reached maximum medical

improvement from this herniated disk on April 27, 1995 and determined that Long had a 10 percent impairment to the body as a whole.[2]

Dr. Julian Nadolsky, a vocational rehabilitation expert, testified that he reviewed the medical records and also administered several physical and vocational tests to Long.[3] He agreed with the lifting and bending restrictions imposed on Long by Dr. Schooley and estimated that Long's vocational disability was 63 percent due to her back injuries. He testified that she could perform work of a light or sedentary nature.

Long testified that the injury to her back has adversely affected her life. She said she is often in pain and has limited movement. She cannot stand or sit for extended periods of time, nor can she walk up stairs or do housework without pain. She obtained a job as a cashier in December 1996, but had to quit one month later due to the pain in her back from prolonged standing. Long's husband, a friend, and her mother-in-law, all testified as to the ways the back injury has affected her life.

The trial court found that Long sustained an injury arising out of and in the course of her employment and that she had 55 percent permanent partial disability to the body as a whole. The trial judge made detailed findings of fact regarding the evidence and the credibility of the witnesses. The trial judge found that Tammy Long "is a truthful person and that she told the truth during th[e] hearing." The trial court also reviewed the medical evidence in detail and found that the evidence, along with the testimony, established that Long sustained a work-related, compensable injury.

---

[2] In August of 1995, Schooley found that Long had a second herniated disk at L4-L5, which was also removed surgically. After the surgeries, Long was again examined by Dr. Hudson, who again maintained that Long's injury was a spontaneous degenerative condition and not work-related.

[3] The physical test included a Cybex Liftask, Valpar Whole Body Range of Motion, Belton Audiometer, Visual, and Cybex low back tests measuring trunk extension and torso rotation. The vocational tests included a Wide Range Achievement test, Revised Beta Intelligence Examination, the Wonderlic Personnel test, the OASIS Aptitude Survey, and the Perceptual Speed Test.

On appeal, the Workers' Compensation Special Appeals Panel reversed the trial court's judgment:

> We find that the total evidence in this case preponderates against the finding that these injuries arose out of and in the course of Ms. Long's employment by Tri-Con Industries, Ltd. She had an admitted history of back injury. She initially denied that these injuries were work related. She had a fall at home that could have caused injury. The preponderance of the evidence is that onset of pain was away from her job. The second herniation occurred months after she ceased working for the defendant. The record is totally lacking in evidence of a specific injuring incident at work.

The Panel, therefore, reversed and dismissed. We granted Tammy Long's motion for Supreme Court review and now reinstate the judgment of the trial court.

## CAUSATION

In a workers' compensation case, appellate review on factual issues is de novo with a presumption that the trial court's findings are correct, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-225(e)(2) (1991 & Supp. 1998); e.g., Hill v. Eagle Bend Mfg., Inc., 942 S.W.2d 483, 487 (Tenn. 1997). When a trial court has seen and heard witnesses, and issues of credibility and weight of testimony are involved, considerable deference is afforded the trial court's findings of fact. Id.

To prove a "work-related" injury, a plaintiff must establish by a preponderance of the evidence that he or she sustained an injury "arising out of and in the course of" the plaintiff's employment. Tenn. Code Ann. § 50-6-102(a)(5) (Supp. 1998). The phrase "arising out of" refers to cause or origin of the injury. The phrase "in the course of" refers to the time, place, and circumstances of the injury. E.g., Jones v. Hartford Accident & Indem. Co., 811 S.W.2d 516, 519 (Tenn. 1991).

In most cases, a plaintiff must establish the causation element by expert medical evidence. E.g., Orman v. Williams Sonoma, Inc., 803 S.W.2d 672, 676 (Tenn. 1991). Although causation cannot be based upon speculative or conjectural proof, absolute medical certainty is not required, and reasonable doubt must be extended in favor of

the employee. Hill, 942 S.W.2d at 487. Accordingly, a trial judge may properly predicate an award in favor of an employee based on medical evidence that an incident "could be" the cause of the injury, where the trial judge has also heard lay testimony from which it reasonably inferred that the incident was in fact the cause of the injury. Id.; see also Jones, 811 S.W.2d at 521; Orman, 803 S.W.2d at 676.

We begin by noting that the trial judge made detailed findings both with respect to the oral testimony and the medical evidence contained in depositions. The trial judge expressly found that Tammy Long was credible and that her testimony was truthful.[4]

Long testified that her work included repetitive lifting, twisting her body, and standing for extended periods and that on October 15, 1994, she experienced pain in her hip and the lower left side of her back while at work. Although she could not identify one incident that triggered the onset of pain, she had worked 55 hours that week, while standing at least 8 hours per day. Long testified that the pain in her back worsened, causing her to miss work and to see her personal physician. Although Long did not at first report the injury as being work related, the trial court observed that Long initially did not know what had caused the injury.

The trial court also reviewed in detail the deposition testimony of the medical witnesses. Dr. Colburn examined Long on three occasions. He observed that she was in severe pain, had limited flexion and movement, and had tenderness and palpations in her left lower back. He referred her for an MRI, which revealed two herniated disks: L4-L5 and L5-S1. Colburn concluded from his examinations of Long and the results of the MRI that the injuries reasonably could have been work-related. Dr. Colburn referred Long to Dr. William Schooley, a neurosurgeon who likewise diagnosed and surgically

---

[4] Similarly, the trial judge found that Long's husband and mother-in-law were also credible witnesses. In contrast, the judge found that the testimony of two human resources employees who testified for Tri-Con was not persuasive "because of the nature of the testimony. . . and the manner in which they testified and some of the facts and positions that they took."

removed, a herniated disk at L5-S1. At a later date, Schooley diagnosed and surgically removed a second herniated disk at L4-L5.

The trial court distinguished the deposition testimony of the appellee's physician, Dr. Toney Hudson:

> This Court does not give as much credence to the deposition testimony of Dr. Hudson because of the nature of some of the statements that he made and because of the fact that he looked at the MRI's and did not reach a diagnosis of herniated disks in her back. The Court, in reading Dr. Hudson's deposition, is not as persuaded by his testimony as . . . by some of the other medical information in these records.

The trial judge also observed that Hudson's initial examination of Long consisted of "asking her to raise both her legs up while she was lying on her back, and then later when she was standing up, he pushed her forward. And these are really the only two physical things that he did."

We conclude that the evidence in the record does not preponderate against the trial court's findings. As noted above, causation does not require absolute certainty. Dr. Colburn's testimony, which the trial court reviewed in detail, concluded that Long's injury reasonably could be work-related. Dr. Colburn's diagnosis was the same as Dr. Schooley, the neurosurgeon who diagnosed and surgically removed a herniated disk. The medical evidence is also corroborated by Long's testimony that the pain in her back occurred while she was at work. The trial judge specifically found Long to be a truthful and credible witness.

The reviewing court must give considerable deference to the trial court's findings with regard to the weight and credibility of oral testimony, as it is the trial court which had the opportunity to observe the witness's demeanor and to hear the in-court testimony. Hill, 942 S.W.2d at 487. Accordingly, we conclude that the evidence does not preponderate against the trial court's judgment.

## PHYSICAL EXAMINATION[5]

After Long's surgeries to remove the herniated disks, but prior to trial, Tri-Con filed a motion requesting that the trial court order Long to undergo another physical examination. The motion noted that the impairment rating assigned by Dr. Schooley "was significantly higher than anticipated" and further asserted that "additional opinion testimony regarding the amount of any permanent impairment retained by [Long] as a result of her injury is necessary for the fair and complete adjudication of this matter."

The trial court granted the motion, but ruled that the additional examination was to be performed by Dr. Hudson, i.e., the physician already selected by Long from the list initially provided to her by Tri-Con. Tri-Con now contends that the trial court erred in limiting the additional examination of Long to Dr. Hudson, who, unlike Dr. Schooley, did not possess expertise in neurology or orthopedics. Tri-Con contends that it was prejudiced because the trial judge subsequently gave less weight to the testimony of Dr. Hudson.

Both sides cite the following statutory provision with respect to compelling an employee to undergo a physical examination:

> The injured employee must submit to the examination by the employer's physician at all reasonable times if requested to do so by the employer, but the employee shall have the right to have the employee's own physician present at such examination, in which case the employee shall be liable to such physician for such physician's services.

Tenn. Code Ann. §50-6-204(d)(1) (Supp. 1998).

Tri-Con's arguments are not supported by the record. First, we note that Tri-Con's motion did not request that the examination be performed by an orthopedist or neurologist. Second, Dr. Hudson was among the three physicians provided at the outset by the employer to Long as required by the statutes. Tenn. Code Ann. § 50-6-

---

[5] The Workers' Compensation Special Appeals Panel did not address this issue because it deemed its holding with regard to the causation issue dispositive.

204(a)(4) (1991 & Supp. 1998). Finally, Dr. Hudson stated in his deposition that as a qualified internist, he is "much more qualified to see a patient with a back problem than is an orthopedic surgeon." He also testified that he "sees back problems every day of the year" and is "amply qualified to evaluate a patient or a person with a back problem." In short, Tri-Con has failed to show that the trial court abused its discretion. E.g., Tibbals Flooring Co. v. Marcum, 218 Tenn. 509, 512, 404 S.W.2d 498, 500 (1966).

## CONCLUSION

Our review of the record shows that the evidence does not preponderate against the trial court's finding that Tammy Long suffered a compensable, work-related injury amounting to 55 percent disability to the body as a whole. Accordingly, we reverse the judgment of the Workers' Compensation Special Appeals Panel and reinstate the judgment of the trial court.

Costs of appeal are taxed to the appellees.

_____
RILEY ANDERSON, CHIEF JUSTICE

**Concur:**
Birch, Holder and Barker, JJ.

Drowota, J., not participating

-10-