IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 20, 2003 Session

# GREGORY MORRIS v. SHELBY COUNTY GOVERNMENT

**An Appeal from the Circuit Court for Shelby County**
**No. CT-003875-01     John R. McCarroll, Judge**

---

**No. W2002-01394-COA-R3-CV - Filed October 6, 2003**

---

This is a claim for on-the-job injury benefits. The plaintiff was a jailer in the defendant county sheriff department. While at work, the plaintiff fell down an escalator onto his knees. He did not receive medical treatment at that time. Over seven months later, the plaintiff began working a shift at the jail that required him to stand during the entire shift, causing pain and swelling in his knees. Consequently, the plaintiff underwent surgery on both of his knees. The plaintiff filed a lawsuit seeking on-the-job injury benefits for the time he was off work recovering from the surgeries. The trial court held that he was not entitled to the benefits, finding that the expert medical testimony did not establish that the condition for which the plaintiff underwent surgery arose out of his employment. The plaintiff now appeals. We affirm, concluding that the evidence does not preponderate against the trial court's finding that the plaintiff had not proved causation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

A. Wilson Wages, Millington, Tennessee, for the appellant, Gregory L. Morris.

Carroll C. Johnson, Memphis, Tennessee, for the appellant, Shelby County Government.

## OPINION

Plaintiff/Appellant Gregory L. Morris ("Morris") was a jailer for the Defendant/Appellee Shelby County Sheriff's Department ("the County") for about four years prior to the incident in question. On May 17, 2000, while Morris was at work, he fell on a downward escalator and landed on both of his knees.[1] On the same day, Morris filled out the required on-the-job injury ("OJI") form explaining what happened in the incident. In the ensuing months, Morris did not miss any work

---

[1]At that time, he was about forty-three years old.

because of the fall. On June 16, Morris filled out an OJI follow-up form, stating that he had not received medical attention for his injury.

In January 2001, Morris was assigned to the night shift at the jail, from 10 pm to 6 am. No chairs were provided for the jailers during this shift,[2] and consequently Morris was required to stand throughout the entire shift. After three nights of working the night shift, Morris suffered pain and swelling in his knees. On February 1, 2001, Morris visited an orthopedic surgeon, John J. Lochemes, M.D. ("Dr. Lochemes"), about his knees. In February and April 2001, Dr. Lochemes performed surgery on Morris's left and right knees in separate surgeries.

On June 25, 2001, Morris filed a lawsuit against Shelby County, seeking OJI benefits pursuant to the County's OJI/temporary total disability policy. He asserted that the knee surgeries were a result of the damage to his knees caused by the May 17 fall. He also claimed that the injury to his knees was aggravated by having to stand the entire time while working the night shift. In its answer, the County contended that Morris was not entitled to OJI benefits because, *inter alia*, he did not receive medical treatment for his injury within seven days after the incident. On April 25, 2002, the County amended its answer to assert as well that Morris's complaint should be dismissed because it was filed outside the one-year statute of limitations provided in Tennessee Code Annotated § 50-6-203.

On May 6, 2002, the trial court conducted a bench trial. Morris testified at trial. He said that, prior to his fall on May 17, 2000, he was fairly active, walking and jogging two or three times a week. Although he acknowledged that, prior to the accident, he had experienced some fluid on his knees after exercise, he claimed that he did not experience any pain in his knees until after the accident. Morris stated that, about two weeks after the accident, he called Corporal Barbara Jean Williams ("Williams"), who was in charge of OJI cases, and told her that he was having sharp pains in both of his knees, resulting from his fall. Morris testified that Williams told him that since he had not sought medical attention within seven days after the accident, the county was not responsible for paying him OJI benefits. At the end of June 2000, Morris visited his family doctor, Dr. Daniels, to treat the fluid on his right knee. Dr. Daniels had been treating Morris's knee prior to the accident. At that time, Morris testified, he did not believe that he had sustained an injury that would require knee surgery. In January 2001, Dr. Daniels referred Morris to Dr. Lochemes who ultimately performed surgery on both of Morris's knees. When he first visited Dr. Lochemes, Morris said, he discussed the accident and how the change of duties aggravated the condition of his knees. Morris testified that, until the surgery, he had not missed any work because of his knees.

Also submitted at trial was the deposition testimony of two experts, the surgeon, Dr. Lochemes, and Joseph C. Boals, M.D. ("Dr. Boals"). Though he did not note it in his written report, Dr. Lochemes recalled in his deposition testimony that, at the first visit, Morris told him that he was having problems with both of his knees. Dr. Lochemes testified that the decision to operate on

---

[2]The chairs were removed during the night shift because of reports that some of the jailers had been sleeping on the job, posing a safety hazard.

Morris's knees was based on MRI reports that showed that each knee had a torn meniscus, or cartilage. Morris was instructed not to work for approximately three months total for both surgeries. At a follow-up visit in April 2001, Morris asked Dr. Lochemes whether his escalator fall in May 2000 could have caused the condition that required surgery. Dr. Lochemes responded that "anything is possible." On cross-examination, Dr. Lochemes was asked about the causal connection between Morris's fall and the condition that caused the surgery:

[Defense Counsel]:   But assuming [Morris's fall] did happen –

[Dr. Lochemes]: Right, and I'm assuming it did.

[Defense Counsel]:   – could it have caused the problems that you found?

[Dr. Lochemes]: It's pretty unusual.

[Defense Counsel]: Could it?

[Dr. Lochemes]: Give me a percentage could.

[Defense Counsel]: 51 percent?

[Dr. Lochemes]: No.

[Defense Counsel]: Could or might it have caused the condition that you treated?

[Dr. Lochemes]: Anything is possible.

It should be noted that Dr. Lochemes's opinion on causation was based on the erroneous presumption that Morris fell on the jagged edge of the escalator steps, when in fact he fell on a flat surface. Dr. Lochemes assigned Morris a 5% impairment rating on both legs.

Morris's attorney asked Dr. Boals to examine Morris to give an independent medical assessment to be used at trial. In making his assessment, Dr. Boals reviewed Morris's medical records and considered his health history. Dr. Boals stated that Morris had reported "no symptoms of pain, locking or swelling in the knees prior to this injury" in May 2000, but that his symptoms became increasingly worse after the escalator fall. From that information, Dr. Boals concluded that the escalator injury caused the condition for which Morris had undergone surgery. Dr. Boals found that Morris qualified for a permanent impairment of 10% on his left knee and 2% on the right.

Shelby County submitted the testimony of Corporal Barbara Jean Williams, to whom Morris had referred in his testimony. Corporal Williams testified that she was in charge of following up on OJI benefit claims in the sheriff's department. She explained that the employee handbook states that, after an injury, an employee has seven days in which to seek medical help. After that, Williams

testified, the County is not responsible for paying OJI benefits.[3] Williams said that the forms Morris filled out reflect that he did not receive medical attention in the seven day period after the accident. Therefore, when he later informed Williams that he was having problems with his knees, she told him that he was ineligible for benefits.

At the conclusion of trial, the trial court held in favor of the County. The trial court stated:

> The main issue to me is the question of causation. And I've read Dr. Lochemes' deposition thoroughly and have gone back and read portions of it again to try to get the context and the feel for the entire deposition.
>
> But it's my opinion that his opinion is that the occurrence of May 17th, 2000, and the standing which was required in January of 2001, is not the cause of Mr. Morris' condition for which he treated him and for which he has had surgery. And based upon that fact only, the Court is going to render a judgment in favor of the defendant, Shelby County.

Therefore, based on Dr. Lochemes's testimony, the trial court concluded that causation had not been established. Accordingly, on May 16, 2002, the trial court entered an order finding in favor of the County, denying Morris's claim for OJI benefits. In the order, the trial court stated that "the proof does not show that the Plaintiff sustained an injury which arose out of and in the course of his employment with the Defendant Shelby County . . . ." Morris now appeals that decision.

This case was tried to the trial court without a jury. Thus, we review the trial court's findings of fact *de novo* upon the record, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-225(e)(2) (Supp. 2002); *See Jackson v. Shelby County*, No. W2002-02627-COA-R3-CV, 2003 WL 21756692, at *2 (Tenn. Ct. App. July 28, 2003). We review conclusions of law *de novo*, with no such presumption of correctness in the trial court's conclusion. *Jackson*, 2003 WL 21756692, at *2. Where, as here, the medical testimony is presented by deposition, the reviewing court may make an independent assessment of the medical proof to determine where the preponderance of the evidence lies. *Whirlpool Corp. v. Nakhoneinh*, 69 S.W.3d 164, 167 (Tenn. 2002).

On appeal, Morris argues that the trial court erred in concluding that he had not proven his injuries arose out of his employment. He asserts that the weight of the expert testimony showed that his knee problems were caused by the May 17, 2000 fall at work, and that those problems were aggravated by the subsequent change requiring him to stand during the entire night shift. He relies on Dr. Boals's definitive conclusion that his surgeries were caused by his on-the-job injury, which

---

[3]The applicable handbook provision regarding OJI benefits states:

If an injury requires medical attention, a physician must be seen within seven days of the incident that caused the injury. The County will not accept responsibility for an injury claim if the initial medical treatment was performed more than seven days after the incident that caused the injury.

he notes was uncontradicted in the record. Although Morris admits that Dr. Lochemes "was a bit elusive about the subject" in his deposition testimony, he argues that Dr. Lochemes's overall testimony supports his argument that the May 2000 fall caused the condition that led to his surgery. Morris also notes his own uncontradicted testimony that the surgery was the ultimate result of his fall in May 2000.

In response, the County argues that more weight should be given to the testimony of Dr. Lochemes, who was the treating physician. Dr. Lochemes said that it would be unusual, or a less than 51% chance, that Morris's fall would cause the condition that required surgery in this case. The County observes that Dr. Boals's opinion was conclusory and did not address any connection between the prolonged standing and Morris's knee problems.

We must determine whether the preponderance of the evidence weighs against the trial court's conclusion that Morris did not prove that the condition which resulted in his knee surgery arose out of his employment. "Generally, an injury arises out of and is in the course and scope of employment if it has a rational connection to the work and occurs while the employee is engaged in the duties of his employment." *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991). The plaintiff bears the burden of proving causation by a preponderance of the evidence. *Long v. Tri-Con Indus.*, 996 S.W.2d 173, 177 (Tenn. 1999). Except in obvious cases, causation must be proven by expert medical testimony. *See Thomas v. Aetna Life & Cas. Co.*, 812 S.W.2d 278, 283 (Tenn. 1991). In determining the credibility of expert testimony, we may "consider the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information to them." *Crossno v. Publix Shirt Factory*, 814 S.W.2d 730, 732 (Tenn. 1991). Greater weight may be given to the opinion of the treating physician over the opinion of a physician who was hired to evaluate the case for trial. *Hensley v. England/Corsair Upholstery Mfg.*, No. E2002-01763-WCM-CV, 2003 WL 21466683, at *2 (Tenn. Sp. Workers' Comp. June 24, 2003). In any event, the medical testimony must be considered in conjunction with the lay testimony of the employee as to how the injury occurred and as to his subsequent condition. *Thomas*, 812 S.W.2d at 283. In order to recover for aggravation of an underlying condition, there must be proof of a further anatomical injury or actual advancement of a pre-existing condition. *See Talley v. Virginia Ins. Reciprocal*, 775 S.W.2d 587, 591-92 (Tenn. 1989).

In this case, the trial court apparently credited the testimony of the treating physician, Dr. Lochemes and rejected the testimony of Dr. Boals, who was hired to evaluate the case for trial. Dr. Lochemes, who was Morris's treating physician, was unable to causally link the fall and the constant standing to the torn meniscus that was surgically repaired on both knees. He described Morris's condition as "degenerative," in the sense that it comes with age, observing that "[m]eniscus tears are found with far increasing frequency as we get into thirty and forties." Dr. Lochemes stated that it would be unusual for a fall on "jagged jigged" rock to cause the condition for which Morris was treated, though admittedly Morris fell on a flat surface. In contrast, Dr. Boals, without explanation, simply made the conclusory statement that "the injury did cause this condition." Dr. Boals's opinion appears to have been based on the presumption that Morris had no previous history of knee trouble,

when, in fact, Morris acknowledged that he had experienced difficulty with swelling in his right knee prior to the fall. Considering the record as a whole, we must agree with the trial court's decision to credit the testimony of the treating physician, Dr. Lochemes, over the testimony of Dr. Boals, and therefore agree with the trial court's conclusion that Morris did not prove causation. Consequently, we find that the evidence does not preponderate against the trial court's finding that Morris's injury did not arise out the course of employment.

The decision of the trial court is affirmed. Costs are to be taxed to the Appellant, Gregory L. Morris, and his surety, for which execution may issue, if necessary.

                                        _____

                                          HOLLY M. KIRBY, JUDGE