FILED

**October 19, 2016**

**TN COURT OF
WORKERS'
COMPENSATION
CLAIMS**

**Time: 2:55 P.M.**



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**COURT OF WORKERS' COMPENSATION CLAIMS**
**AT JACKSON**

| | | |
|---|---|---|
| **RICHARD KING,** | ) | **Docket No.: 2016-07-0378** |
| **Employee,** | ) | |
| **v.** | ) | |
| **BIG BINDER EXPRESS, LLC,** | ) | **State File Number: 35498-2015** |
| **Employer,** | ) | |
| **And** | ) | |
| **PRAETORIAN INSURANCE CO.,** | ) | **Judge Allen Phillips** |
| **Insurance Carrier.** | ) | |
| | ) | |

---

## EXPEDITED HEARING ORDER DENYING REQUESTED MEDICAL EVALUATION

---

This matter came before the undersigned Workers' Compensation Judge on September 26, 2016, upon the Request for Expedited Hearing filed by Big Binder pursuant to Tennessee Code Annotated section 50-6-239 (2015). Big Binder seeks an independent medical evaluation (IME) of Mr. King. Mr. King opposes the request on grounds that it is unreasonable. Accordingly, the issue is Big Binder's entitlement to an IME of Mr. King. For the following reasons, the Court determines Big Binder is not entitled to the requested evaluation.[1]

### History of Claim

Mr. King is a sixty-year-old resident of Weakley County, Tennessee who worked for Big Binder as a truck driver. On March 24, 2015, a "crank handle" struck him in the face resulting in a nasal bone fracture, blurred vision, and headaches. Big Binder accepted the claim and provided medical benefits.

Mr. King saw several medical specialists including an optometrist, an ENT, a neurologist, and an ophthalmologist. In this Expedited Hearing, Big Binder requests another evaluation following the treatment and assessment of an impairment rating by the

---

[1] The Court has attached a complete listing of the technical record and exhibits admitted at the Expedited Hearing to this Order as an appendix.

ophthalmologist, Dr. Jason Sullivan.

Dr. Sullivan first saw Mr. King on May 1, 2015. He noted an ENT found no issues with Mr. King's broken nose and that Mr. King was seeing a neurologist in Memphis regarding headaches. (Ex. 1 at 37.) Regarding Mr. King's vision, Dr. Sullivan recorded a history of glare problems at night and "distortion in his vision since the accident." *Id.* Mr. King reported difficulties with focusing his eyes from time to time and with small print when using his new glasses. *Id.* After examination, Dr. Sullivan stated, "[m]y only finding is that he has a weak bifocal in his glasses and that he has early cataracts in his eyes." *Id.* Because Mr. King's symptoms "seem mostly to do with lights, [Dr. Sullivan thought] that this is neurological and concussion related." *Id.* Dr. Sullivan thought more time may alleviate the light issues but stated he would "defer that opinion to a neurologist." *Id.* He recommended Mr. King return in three weeks for a visual field test. *Id.*

Dr. Sullivan performed the visual field test on June 15, 2015, and concluded the "testing is somewhat nonspecific and [Mr. King's condition] certainly does not appear neurological." (Ex. 1 at 45). He continued his diagnosis of cataracts and advised he would consider removing them if Mr. King continued to have problems with night vision. *Id.* He released Mr. King to full duty and placed him at maximum medical improvement. *Id.*

On November 5, 2015, Mr. King's counsel obtained an Independent Medical Evaluation from Dr. Samuel Chung. (Ex. 1 at 46.) Dr. Chung performed a "mini-mental status evaluation," examined Mr. King's nose and performed a neurological exam. He did not examine Mr. King's eyes. *Id.* at 47. After his examination, Dr. Chung assessed a ten percent permanent impairment rating for "neurologic impairment due to alteration in mental status, cognition, and highest integrated function." *Id.* at 48. Additionally, Dr. Chung assessed a three percent permanent impairment for loss of the ability to smell. These ratings, when combined, amounted to a thirteen percent impairment to the body as a whole. *Id.* Regarding Mr. King's vision, Dr. Chung stated: "At this time, I am unable to determine the specific impairment rating for his eye. We defer the specific impairment rating for the eyes to the ophthalmologist." *Id.*

On December 17, 2015, Dr. Sullivan completed a form entitled, "Evaluation of Permanent Visual Impairment." Under the heading "Visual Field," he wrote the scores of various examination findings and the word, "unreliable." *Id.* at 42. On the same form, Dr. Sullivan recorded a thirty-four percent "visual system impairment rating," which he also translated to a thirty-four percent impairment to the body as a whole. *Id.* He wrote at the end of the evaluation form: "I believe these results are skewed because of the unreliable and inconsistent results of the peripheral vision testing."[2] *Id.*

---

[2] The parties did not contest that Dr. Sullivan completed the form.

In April 2016, Big Binder filed an Application for a Medical Impairment Rating (MIR). (Ex. 3). In the application, it indicated the disputed body parts for the requested evaluation were the "Eyes and the Visual System." (Ex. 3 at 2). Regarding the indicated disputed ratings, Big Binder listed Dr. Sullivan's thirty-four percent rating for a "visual field defect" and Dr. Chung's thirteen percent rating for "Cognitive/Loss of Smell." *Id.* at 3. The MIR Program Coordinator denied Big Binder's MIR request on May 20, 2016, by stating, in pertinent part:

> The Bureau interprets the definition of a dispute, per 0800-2-20-.01(6) to mean two different ratings from two different physicians on the same body part or organ system . . . In this case it appears that Dr. Chung did not give a rating on the vision and Dr. Sullivan did . . . You have one rating on the visual organ system, as rated per chapter 12 of the AMA Guides, and until you have another visual rating, you do not qualify for an MIR to rate the vision injury for Mr. King.

(Ex. 4 at 13.)

On June 3, 2016, Big Binder served upon Mr. King, through his counsel, a Notice of Independent Medical Evaluation. (Ex. 2.) In the notice, Big Binder quoted Tennessee Code Annotated section 50-6-204(d)(1) to the effect that, "[t]he injured employee must submit to examination by the employer's physician at all reasonable times if requested to do so by the employer[.]" *Id.* Big Binder placed Mr. King on notice that it and its carrier were, "exercising their right to an independent medical evaluation of Mr. King" and advised him of an appointment on July 27, 2016, with Dr. Hilary Grissom of the Eye Clinic in Jackson, Tennessee.

Following service of this notice, counsel exchanged correspondence regarding the request. Therein, Big Binder considered its request for an independent medical evaluation reasonable under the circumstances; Mr. King disagreed. (T.R. 1 at 7-9.) Because of the disagreement, Big Binder filed a Petition for Benefit Determination (PBD) on June 14, 2016, and listed the dispute as follows:

> As counsel for employer/carrier, to properly and fairly evaluate Employee's claim for workers' compensation benefits, we scheduled an IME of the Employee pursuant to T.C.A. § 50-6-204 to evaluate Employee's eye impairment. In response to our Notice of IME, counsel for Employee responded with e-mail correspondence advising Employee would not be going.

(T.R. 1 at 2.)

3

When the parties could not resolve the dispute through mediation, the mediating specialist filed a Dispute Certification Notice on July 6, 2016, framing the issue as whether, "the employer is entitled to an employer's independent medical evaluation." Big Binder then filed its Request for Expedited Hearing.

*Big Binder's Position*

At the Expedited Hearing, Big Binder argued that, "[i]f the employer requests, the injured employee must submit to an examination at a reasonable location by the employer's physician at a reasonable time." Prehearing Statement of Employer at 2. It cited *Overstreet v. TRW*, 256 S.W.3d 626 (Tenn. 2008), where the Supreme Court discussed the applicability of both Tennessee Code Annotated section 50-6-204(d)(1) and Tennessee Rule of Civil Procedure 35.01 to requests for independent medical evaluations. Big Binder points out that the *Overstreet* court held, "a plain reading of Tennessee Code Annotated section 50-6-204 gives the employer a right to compel the employee to undergo an independent medical evaluation, so long as the request is 'reasonable.'" *Id.* at 629. Likewise, once a court finds the request for an IME is reasonable, the finding also constitutes "good cause" under Rule 35.01. *Id.* at 638.

Big Binder cited *Lawson v. MidSouth Transport*, No. 2014-02-0067, 2015 TN Wrk. Comp. LEXIS 34, at *13 (Tenn. Ct. Workers' Comp. Claims Apr. 15, 2015), a decision of this Court authored by another Judge to the effect that, "Tennessee Courts have consistently held that employers are entitled to a reasonable examination by their doctor." Prehearing Statement at 3. Further, Big Binder points to the dissent in *Perry v. Gap, Inc.*, No. M2004-02525-WC-R3-CV, 2006 LEXIS 448 (Tenn. Workers' Comp. Panel May 31, 2006), for the proposition that it is not the employer who chooses the physician, but rather the employee.

Big Binder concludes that, "at the end of the day, thirty-four percent to the body is a sizeable impairment rating." Dr. Sullivan noted the results of his testing were "skewed." However, he did not explain what he meant and the issue "needs to be fixed." Accordingly, Big Binder "thinks there is a problem" with the reliability of the rating and the case is appropriate for an IME.

*Mr. King's Position*

Mr. King contended the IME request is "completely unreasonable and is designed for one purpose and one purpose alone, which is to create an artificial controversy in impairment ratings such that employer and insurance company can then more likely than not pursue an MIR evaluation." Employee's Response to Employer's Prehearing Statement at 3. Mr. King contends: 1) Big Binder accepted his injury as compensable; 2) that he "has been seen, evaluated, rated, and released by [Dr. Sullivan]"; and, 3) that he is not seeking any additional medical treatment. *Id.* The purpose of Big Binder's request for

4

an IME is the same as its request for an MIR evaluation, namely to "get a lower rating." The fact that Big Binder only disputed the vision rating, and not the other ratings, confirms it is simply unhappy with the vision rating.

Mr. King argued that *Long v. Tri-Con Indus., Ltd.*, 996 S.W.2d 173 (Tenn. 1999), is applicable because there, as here, the proof showed the employer did not agree with the impairment rating because it "was significantly higher than anticipated." *Id.* at 178. Mr. King also cited two Panel decisions, *Perry, supra,* and *Cross v. Norrod Builders, Inc.*, No. M2005-00743-WC-R3-CV, 2006 LEXIS 855 (Tenn. Work. Comp. Panel Apr. 11, 2006), as examples of when a trial court denied an employer's IME request. He quoted the trial court in *Perry* as stating, "The Defendant has already had the Plaintiff seen by another of their doctors and [the court] will not require her to go to yet another doctor." Employee's Response at 5. In *Cross,* Mr. King notes the Panel stated, "Under the circumstances of this case, the trial judge was correct to determine that [the treating physician] was the employer's physician within the meaning of Tennessee Code Annotated section 50-6-204(d)(1). The statute does not require repeated examinations be conducted because the employer is displeased with the results." *Cross,* at *9.

### Findings of Fact and Conclusions of Law

In analyzing the IME request, the Court first looks to the applicable statute. Specifically, Tennessee Code Annotated section 50-6-204(d)(1) provides:

> The injured employee must submit to examination by the employer's physician at all reasonable times if requested to do so by the employer, but the employee shall have the right to have the employee's own physician present at the examination, in which case the employee shall be liable to the employee's physician for that physician's services.

In an early case, *Trent v. American Service Co.*, 185 Tenn. 298, 206 S.W.2d 301 (Tenn. 1947), our Supreme Court explained the language of the statute[3] as follows:

> The purpose of [requiring the injured employee to] comply "with any reasonable request for an examination" "at all reasonable times" is obviously for the purpose, among others, of furnishing to the employer a fair means of ascertaining if and when the employee has entirely recovered from the injury for which the employer is paying compensation or of ascertaining whether the ailments from which the employee suffers at some period subsequent to the injury is due to that injury or to some other cause

---

[3] Though it decided *Trent* in 1947, the Supreme Court has noted that the language of Tennessee Code Annotated section 50-6-204(d)(1) is the same language as the version of the statute in effect in *Trent. Overstreet v. TRW,* 256 S.W.3d 626, 636 (Tenn. 2008). This Court notes the current version of section 204(d)(1) is identical to the language of the statute in effect when *Overstree*t was decided.

5

not connected with his or her employment.

*Id.* at 303. The Court noted that if an examination will determine the work relation of a condition, then a request for a non-invasive procedure is reasonable. *Id.* at 305.

In *Overstreet v. TRW Commer. Steering Div.*, 256 S.W.3d 626 (2008), the Court confirmed its interpretation of section 50-6-204 by stating that, "a plain reading of Tennessee Code Annotated section 50-6-204 gives the employer a right to compel the employee to undergo an independent medical evaluation, so long as the request is 'reasonable.'" *Id.* at 629. "It is only when the request is unreasonable that the employer cannot exercise the right," and, "the trial judge is vested with discretion in determining whether the circumstances warrant the examination." *Id.* at 637.

The *Overstreet* court also noted Tennessee Rule of Civil Procedure 35.01, which allows a request for a physical examination, requires the proponent of the examination to establish two criteria: (1) the mental or physical condition of a party is in controversy and (2) good cause for the examination exists. *Id.* at 638. The Court explained that, "when a trial court finds that an employer has made a reasonable request for examination under Tennessee Code Annotated section 50-6-204(d), this also qualifies as 'good cause' under Rule 35.01." *Id.* Accordingly, under either section 204(d)(1) or Rule 35, it is only when the employer's request is unreasonable that a trial court should deny the evaluation and, if it does, it must specifically state its reasons for the denial in the record. *Id.* at 639.

In this case, the Court holds Big Binder's request for an evaluation is unreasonable for the following reasons.

*The IME request is unreasonable because Dr. Sullivan is the approved physician*

First, the parties do not contest that Dr. Sullivan is an approved physician. It has long been the law in Tennessee that an employer has the right in the first instance to select the physicians who will provide treatment to injured employees. *Atlas Powder Co. v. Grant*, 293 S.W.2d 180, 181 (1956). In this case, Big Binder approved Dr. Sullivan to provide treatment to Mr. King. Mr. King accepted that treatment. This is the process envisioned by Tennessee Code Annotated section 50-6-204(a)(3)(A)(i) requiring the employer to designate a panel of physicians from which the employee might choose the treating physician.

Tennessee case law, including the authority cited by the parties, supports a finding that the evaluation request is unreasonable. Big Binder cites a dissenting opinion in *Perry* where the dissenting judge stated:

Where the trial court has summarily denied the right of the employer to obtain an IME without any cause other than the fact that the employee was

6

treated by a physician to whom she as referred by a physician the employee chose from the panel, I would hold that there was an abuse of discretion. The employer has not chosen either of those doctors.

*Perry*, at *17. However, the majority in *Perry* upheld the trial court's finding that the employee had already seen a panel doctor, the one making the referral, and "[the court] will not require her to go to yet another doctor." *Id.* at *6. In this case, Big Binder chose Dr. Sullivan as an approved physician in the first instance and this Court finds Mr. King should not be compelled to see another physician.

Likewise, this Court finds persuasive the holding of *Cross,* where an employer requested an IME after a conflict between the approved physician and the insurance adjuster. *Cross,* at *9. The insurance adjuster desired that the approved physician place an employee at maximum medical improvement and assign an impairment rating. When the physician did so, the adjuster was dissatisfied with the rating and requested an IME. The Panel stated that, "[t]he statute does not require repeated examinations be conducted because the employer is displeased with the results. *Id.* at *9. Notably, again it was the opinion of an approved physician that prompted the employer to request an IME.

*The IME request is unreasonable because it seeks only another impairment rating*

Big Binder argued that, "at the end of the day, thirty-four percent to the body is a sizeable impairment rating." In making this statement, the Court concludes Big Binder is requesting an IME for one reason: to obtain a lower rating, just as Mr. King suggests. The Court agrees with Mr. King's belief that such is the case because, as he notes, Big Binder had requested an MIR evaluation, the sole purpose of which was to obtain another rating. After the MIR denial, this request for an IME followed.

As noted, Tennessee law has long looked at the language of the applicable statute, section 50-6-204(d)(1), as providing a means for an employer to determine if an employee has completely recovered from an injury or if he suffers from "an ailment" not related to the work. *See Trent*, 206 S.W.2d at 303. Conversely, when an employer provides a physician pursuant to Tennessee Code Annotated section 50-6-204(a)(3)(A)(i), and then requests another evaluation to obtain a rating, our Supreme Court has held an IME is inappropriate. In *Long v. Tri-Con Indus.*, 996 S.W.2d 173 (Tenn. 1999), the employer requested an IME because the impairment rating of an approved physician "was significantly higher than anticipated," and, an "additional opinion" regarding the amount of permanent impairment "was necessary for the fair and complete adjudication of this matter." *Id.* at 179. That IME was denied because, among other things, the physician's opinion prompting the request was "among the . . . physicians provided at the outset by the employer to [the employee as required by the Workers' Compensation Law]." *Id.* The Court holds the facts of the instant case fit within this authority. Big Binder admits by its argument that its IME request was prompted by

7

the fact Mr. King received a significant impairment rating from the treating physician.

Finally, Big Binder's argument that the rating is based upon "skewed" results does not entitle it to another opinion. Big Binder did not argue against the testing methodology itself but, rather the resulting rating. Even if it had argued against the testing methodology, this Court can find nothing reasonable about requesting another opinion when its approved physician performed the subject testing. It is unreasonable for Big Binder to delay resolution of the case by another evaluation when it is their physician who gives a rating that it finds suspect. As pointed out by Mr. King, any "new" rating might simply lead to another MIR request. Moreover, Big Binder might address any issues it has with the rating through a deposition of Dr. Sullivan. Nothing in this interlocutory proceeding prevents it from arguing the shortcomings of the questioned rating, or the allegedly "unreliable" results upon which it is based, at a subsequent compensation hearing.

**IT IS, THEREFORE, ORDERED** as follows:

1. Big Binder's request for another medical evaluation is denied.

2. **This matter is set for a Status Hearing on January 11, 2017, at 1:00 p.m. Central Time.**

**ENTERED this the 19th day of October, 2016.**

**Judge Allen Phillips**
**Court of Workers' Compensation Claims**

Status Hearing:

A Status Hearing has been set with **Judge Allen Phillips, Court of Workers' Compensation Claims. You must call toll-free at 731-422-5263 or 855-543-5038 to participate in the Status Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order

8

to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the

case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:

1. Medical records, collectively, of:
   - Baptist Hospital-Union City
   - Drs. Jordan and Bondurant
   - The Jackson Clinic
   - Dr. Alan Nadel
   - Dr. Jason Sullivan
   - Dr. Samuel Chung
2. Notice of Independent Medical Evaluation
3. Application for a Medical Impairment Rating (MIR)
4. E-mail correspondence between the parties and with the MIR Program Coordinator

Technical record:[4]

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Pre-Hearing Statement of the Employer
5. Employee's Response to the Employer's Pre-Hearing Statement

---

[4] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 19th day of October, 2016.

| Name | Via Email | Service sent to: |
|---|---|---|
| Jay DeGroot, Esq., Attorney for Employee | X | jdegroot@garretylaw.com<br>ghayes@garretylaw.com |
| Michael W. Jones, Esq., Attorney for Employer | X | mjones@wimberlylawson.com<br>jbartell@wimberlylawson.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims

11