FILED

April 27, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 7:48 AM



## COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

**EMPLOYEE: Tequila Nance**

**EMPLOYER: Randstad**

**DOCKET #:   2015-07-007**
**STATE FILE #: 99483-2014**
**DATE OF INJURY: December 16, 2014**

**INSURANCE CARRIER/TPA: Indemnity Ins. Co. of N. America**

### EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge on March 30, 2015, upon the Request for Expedited Hearing filed by Tequila Nance (Ms. Nance), the Employee, on February 23, 2015, pursuant to Tennessee Code Annotated section 50-6-239 to determine if Randstad, the Employer, is obligated to provide medical and/or temporary disability benefits.

The undersigned Workers' Compensation Judge conducted an in person Expedited Hearing on March 30, 2015. Ms. Nance represented herself. Mr. Hunter Chandler represented Randstad. Considering the applicable law, Ms. Nance's testimony, documentary evidence, argument of the parties and the technical record, this Court determines that Ms. Nance would likely prevail at a hearing on the merits and is entitled to further medical evaluation and temporary benefits.

### ANALYSIS

#### Issue

*Whether Ms. Nance has demonstrated, by the evidence, that she would likely prevail at a hearing on the merits so as to entitle her to further medical evaluation or temporary benefits.*

#### Evidence Submitted

The Court designated the following as the technical record:

- Petition for Benefit Determination
- Dispute Certification Notice
- Request for Expedited Hearing

The Court did not consider attachments to the above filings not admitted into evidence

1

during the Expedited Hearing. The Court considered factual statements in the above filings and their attachments as allegations unless established by the evidence.

The following documents were admitted into evidence:

Exhibit 1: Medical Records of:
- Physician's Quality Care (PQC)(pp. 8-21)
- Jackson-Madison Co. General Hospital (pp. 22-25)
- Response of Dr. Ellis to "QUESTIONNAIRE"

Exhibit 2: First Report of Work Injury (FROI)
Exhibit 3: Wage Statement (AWW: $314.12/ CR: $ 209.42)
Exhibit 4: Ms. Nance's Job Description
Exhibit 5: Notice of Denial (C-23)
Exhibit 6: Randstad Accident Report completed by Ms. Nance.

## History of Claim

Randstad employed Ms. Nance as a delivery driver for Fed Ex. On December 16, 2014, Ms. Nance was required to deliver packages in a rural area near Cedar Grove, Tennessee. While making deliveries, Ms. Nance needed to use the restroom. Being in a rural area, and unable to find restroom facilities, she was compelled to relieve herself outdoors near the end of a customer's driveway. While doing so, she noted the customer's garage door beginning to open and she rushed to re-enter her delivery van. She twisted her left knee stepping up into the van.

Ms. Nance reported the injury to "Anna" shortly thereafter. Anna directed her to PQC for medical treatment. Later that afternoon, Ms. Nance saw Dr. Dustin Inman at PQC. In the "History of Present Illness," Dr. Inman stated Ms. Nance "works for Fed Ex Ground" and "No UDS per Desi Lee."[1] He further noted that she reported her injury to "Anna and Dezi (Supervisors)." He noted a "knee injury" with onset of "3 hours." Ms. Nance "stated she was stepping up into the van, slipped, and twisted her left knee." She complained of pain and throbbing in her knee.

On examination, Dr. Inman noted her knee was stable to stress testing, devoid of swelling, warmth, or redness, but limited in flexion and extension. An x-ray proved negative. Dr. Inman diagnosed "Injury of knee" and "Unspecified internal derangement of knee." He directed Ms. Nance to "follow-up with Dr. Gardner on Friday," placed her in a knee immobilizer, and opined that she "may need ortho vs. MRI." Dr. Inman prescribed a Medrol dose pack[2] and Ultram[3]. He restricted Ms. Nance to no lifting, pushing or pulling over ten (10) pounds, no driving and no stooping, bending, twisting, squatting or climbing. She was advised not to take her Ultram while working.

---

1 "UDS" is a common medical abbreviation for "urinary drug screen." *Medilexicon.com;* the name "Desi" appears as "Dezi" later in the note and, though the Court is not aware of the correct spelling, in context of the entire body of evidence, it is apparent that such individual is the same person.
2 A Medrol dose pack contains methylprednisolone, a steroid that aids in preventing inflammation. *Drugs.com*
3 Ultram is a narcotic pain reliever. *Drugs.com*

2

Ms. Nance returned to PQC as instructed to see Dr. Gardner on Friday, December 19, 2014. Dr. Gardner indicated under "History of Present Illness" that the "DOI" was "12/16/14" and that Ms. Nance was a "work comp f/u" for a "knee injury." Dr. Gardner recorded no specific examination of the knee but opined that the "[p]atient reports that her knee is approximately 50-60% improved." Dr. Gardner opined physical therapy was "a treatment option" should her condition fail to improve. Dr. Gardner advised Ms. Nance to continue her present restrictions, to wear a "leg splint" and to perform a sitting job. She was to return to Dr. Ellis on December 22, 2014.

As directed, Ms. Nance returned to PQC and saw Dr. Ellis on December 22, 2014. Described as a "work comp eval," Dr. Ellis noted that it was the "1st time to see patient" and that he reviewed the "paperwork." He recorded that Ms. Nance described episodes of locking of her knee and having to "forceably [sic] pull [the] leg straight." She wanted a wheelchair and was "scared to put any weight on her leg." She had pain with walking and bending the knee.

On examination, Dr. Ellis noted subjective tenderness and a mild effusion. He diagnosed an "unspecified internal derangement of [the] knee" and then stated, "with history of locking and continued pain, I think ortho eval is needed to exclude meniscal issues." He continued her restrictions and, on the form documenting restrictions, checked "ortho" under the heading "Orders."

On January 30, 2015, Randstad completed a FROI that stated "[e]mployee injured knee entering the truck in the process of exiting residential customer's driveway" after the employee had urinated on the customer's driveway. On that same date, Randstad completed a Notice of Denial (C-32) form that stated the claim was denied on December 30, 2014, that the "claimant" was notified on that date and the basis for denial was, "no medical evidence that complaints are work-related."

On February 4, 2015, Dr. Ellis responded to a "QUESTIONNAIRE" sent by Randstad's counsel. It read, in full, as follows:

I provide the following opinions to a reasonable degree of medical certainty or probability:

1. Based upon my treatment and evaluation of Ms. Tequila Nance, it is my expert medical opinion that her employment did not contribute more than 50% in causing her left knee injury.

X Agree      □ Disagree

Prior to the December 16, 2014 visit to PQC, Ms. Nance saw PQC for two (2) DOT physical evaluations. The first occurred on May 2, 2014, and, in pertinent part, revealed no musculoskeletal problems. The second occurred on November 7, 2014, and is identical to the first DOT examination. Neither evaluation noted any problems with Ms. Nance's left knee.

Ms. Nance testified a supervisor, "Jennifer," had told her that if in an area where there are

3

no restroom facilities, she could use the restroom outdoors. On the date of the injury, Ms. Nance was taking medications for an infection that caused urinary frequency and urgency. Following the injury, Randstad did not provide a choice of physician. She claims to have been in a wheelchair when she first presented to PQC contrary to the physician's note that she ambulated into the clinic on her own. She consistently complained of knee issues to PQC physicians and discussed further evaluation with a specialist. After the orthopedic referral, PQC told her that Randstad would contact her regarding the appointment. When she did not receive a call, she contacted Randstad and was advised that her claim was denied. She later received the C-32 Notice of Denial.

Following her release from PQC, Ms. Nance sought medical evaluation on her own. She visited the emergency department of Jackson-Madison Co. General Hospital on February 2, 2015. No medical records of that visit were entered into evidence apart from a receipt for her co-pay and a discharge note listing some prescriptions. Ms. Nance testified that her knee was examined at this visit.

Ms. Nance testified that she was twenty-six (26) years of age and had completed three (3) years of college. She worked not only for Randstad but also for Madison Haywood Developmental Services. She has not worked since her knee injury on December 16, 2014.

## Ms. Nance's Contentions

Ms. Nance contends her injury is "work-related." She "figures" her injury is no different from entering her van after delivering a package or "running from a dog." She is desirous of medical evaluation of her knee. She has not worked since the injury and remains unable to work.

## Randstad's Contentions

Randstad contends that the injury did not arise out of or in the course of employment. An injury that occurs when an employee is engaging in activities not related to her employment is outside the course of employment. Randstad cites *Jones v. Hartford*, 811 S.W.2d 516 (Tenn. 1991) for the proposition that, when the employee's deviation from the usual course of employment is of "mutual benefit" to both the employer and the employee, the injury occurs within the course of employment. When using the restroom in the driveway, Ms. Nance deviated from her employment and was not benefitting Randstad; therefore, it properly denied her claim. Likewise, *Connor v Chester Co. Sportswear*, No. W2001-02114-WC-R3-CV, 2002 Tenn. LEXIS 448 (Tenn. Workers' Comp Panel, Oct. 18, 2002) is analogous and supports denial of the claim. There, the employee was rising from the toilet when her knee went out and the court found that the injury did arise out of the employment.

For injuries after July 1, 2014, the law requires that a physician "attribute more than 50%" of the cause of the injury to the work event. Dr. Ellis opined that the injury was not at least 50% of the cause of her injury and Randstad properly denied the claim.

4

## Findings of Fact and Conclusions of Law

### *Standard Applied*

For injuries on or after July 1, 2014, the employee must show that an injury arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(13) (2014). Tennessee Code Annotated section 50-6-239(c)(6) provides that the employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence "unless the statute provides for a different standard of proof." The statute provides a different standard of proof for an Expedited Hearing where a workers' compensation judge may enter an interlocutory order for medical or temporary benefits upon a determination that the injured employee would likely prevail at a hearing on the merits given the evidence. Tenn. Code Ann. § 50-6-239(d)(1)(2014); *McCord v. Advantage Human Resourcing*, No. 2014-06-0063 (Tenn. Work. Comp. App. Bd., March 27, 2015); *cf.*, *McCall v. Natl. Health Corp.*, 100 S.W.3d 209, 214 (Tenn. 2003). In making such determinations, the workers' compensation law is not to be construed either remedially or liberally, but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction favoring neither the employee nor the employer. Tenn. Code Ann. § 50-6-116 (2014).

### *Factual Findings*

Ms. Nance was in the course of her employment when she injured her knee. Because the nature of her job required her to work in a rural area on the date in question, her actions of relieving herself outside did not constitute a deviation from the course of her employment. Further, the Court finds that the mechanism of Ms. Nance's injury was stepping back into her delivery van rather than any movement associated with her urinating at the end of the driveway.

Because Randstad required Ms. Nance to see providers at PQC, the PQC providers are the authorized treating physicians. Dr. Inman opined at the initial visit to PQC that an orthopedic evaluation might be required. Dr. Gardner opined that physical therapy might be required as of her second visit to PQC. At her third visit to PQC on December 22, 2014, Dr. Ellis specifically referred Ms. Nance for an orthopedic evaluation after his diagnosis of internal derangement of the knee and findings of locking of the knee with continued pain.

Dr. Ellis responded to Randstad's "QUESTIONNAIRE" on February 4, 2015 before Randstad provided an evaluation by an orthopedic specialist. Dr. Ellis' response to the "QUESTIONNAIRE" contains no statement of his consideration of all potential causes of Ms. Nance's knee injury. To date, Randstad has not provided the orthopedic evaluation.

Ms. Nance has not worked since the date of injury, December 16, 2014. The restrictions placed by approved providers at PQC prohibit Ms. Nance from performing her required job functions and remain in effect until seen by an orthopedic specialist.

*Application of Law to Facts*

For injuries on or after July 1, 2014, an employee must show that her injury arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(13)(2014). This basic definition of injury is expounded upon by the statutory definition of an injury being accidental only if it is caused by an incident, or specific set of incidents, arising primarily out of and in the course and scope of employment, and identifiable by time and place of occurrence. Tenn. Code Ann. § 50-6-102(13)(A)(2014). "Arising primarily out of and in the course and scope of employment" requires a showing, to a reasonable degree of medical certainty, that the injury causing disablement or the need for medical treatment contributed more than 50% considering all causes. Tenn. Code Ann. § 50-6-102(13)(C)(2014). "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes. Tenn. Code Ann. § 50-6-102(13)(D)(2014).

Because the instant case comes to the Court in the posture of an Expedited Hearing, the Court is required to apply the standard previously stated; specifically, in order to recover the requested benefits, Ms. Nance must show, based upon the evidence at this Expedited Hearing that she is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1)(2014). Such being the case, the Court notes the requirement of Tennessee Code Annotated section 50-6-102(13)(B) that an employee must show *by a preponderance of the evidence* that the employment contributed more than 50% to the injury has yet to attach to this interlocutory stage of the proceedings. Instead, the statutory directive of Tennessee Code Annotated section 50-6-239(d)(1) requires this Court to determine whether Ms. Nance is likely to prevail at a hearing on the merits. For now, Ms. Nance is not required to show by a preponderance of the evidence a 50% or more contribution to the injury by the employment when the sole issues are further medical evaluation and temporary disability benefits. However, this order should not be construed in any way to either obviate the need for adequate proof of causation at a Compensation Hearing or to forestall either party from presenting additional evidence at such hearing to reverse or modify this interlocutory order. *See, McCord v. Advantage Human Resourcing, No. 2014-06-0063 (Tenn. Work. Comp. App. Bd., March 27, 2015) *5; cf. McCall v. Natl. Health Corp., 100 S.W.3d 209, 214 (Tenn. 2003).* With this authority in mind, the Court will address in turn both the requirements of the injury occurring in the course of employment and of the injury arising out of the employment.

*Course of employment*

"In the course of" refers to the time, place, and circumstances of the injury. *Hill v. Eagle Bend Mfg., Inc.,* 942 S.W 2d 483, 487 (Tenn. 1997).[4] An injury occurs in the course of employment "when it takes place within the period of the employment, at a place where the employee reasonably may be, and while the employee is fulfilling work duties or engaged in doing something incidental thereto." *Blankenship v. Am. Ordance Sys., LLC,* 164 S.W.3d 350,

---

4 Reliance on precedent from the Tennessee Supreme Court is appropriate unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the General Assembly through statutory amendments.

354 (Tenn. 2005). Generally, injuries sustained during personal breaks are compensable. *Holder v. Wilson Sporting Goods Co.,* 723 S.W.2d 104, 107 (Tenn. 1987). It is "reasonable to conclude" that an employer realizes employees will engage in personal breaks during the course of their working day including "such incidental acts as eating, drinking, smoking, *seeking toilet facilities,* and seeking fresh air, coolness or warmth." *Wait v. Travelers Indem. Co.,* 240 S.W.3d 220, 226 (Tenn. 2007) citing 1A Larson, Workmen's Compensation Law, §§21.10-21.50 (1990)(emphasis added).

In this case, the Court finds Ms. Nance was in the course of her employment when she was injured. She was at a place where she may reasonably have been when performing her job, at a delivery customer's property, and was "engaged in doing something incidental" to her job, reentering her delivery van after a restroom break. *Blankenship,* 164 S.W.3d at 354. Though Tennessee workers' compensation law recognizes that employees remain in the course of their employment when seeking toilet facilities, *Wait,* 240 S.W.3d at 226, the Court notes that the actual mechanism of injury was the stepping up into the delivery van, not standing up after relieving herself. This is clear not only from her live testimony, which the Court finds credible, but also from the initial medical record of December 16, 2014, which reads, "she was stepping up into the van, slipped and twisted her left knee." Ex. 1 at 5.[5] Randstad's "Accident Injury Report," completed by Ms. Nance, describes the injury occurred when she "rushed to get into the van where I twisted my knee." Ex. 6. The FROI notes "employee injured [her] knee entering the truck." The Court notes Ms. Nance would be required to reenter the delivery van regardless of whether she had left it to use the restroom or to deliver a package. In either scenario, she would remain in the course of her employment.

Randstad's reliance upon *Jones v. Hartford,* 811 S.W.2d 516 (Tenn. 1991), is misplaced. In *Jones,* our Supreme Court discussed the so-called "mutual benefit test." Such test provides that if a deviation from the course of the employment serves the purposes of *both* the employer and the employee, then the employee remains in the course of employment during the deviation. Randstad argues that Ms. Nance's actions in using the restroom outdoors did not further Randstad's interests. The Court respectfully disagrees but such is irrelevant because, as found above, Ms. Nance was injured when reentering the van.

Likewise, *Connor v Chester Co. Sportswear,* No. W2001-02114-WC-R3-CV, 2002 Tenn. LEXIS 448 (Tenn. Workers' Comp Panel, Oct. 18, 2002), is distinguishable. In *Connor,* the employee twisted her knee when arising from the toilet at her workplace. The Panel affirmed the Trial Court's finding of the injury being in the course of employment. *Id.* at 6. However, the Panel reversed on the issue of arising out of the employment by finding that the employee might have arisen from a toilet at any location and that her injury did not result from an injury peculiar to her work. *Id.* at 7. Having found Ms. Nance was injured when reentering her van, a task inherent in the nature of her work, *Connor* is inapposite.

---

5 The Court notes that Exhibit 1, a collective exhibit of the medical records, does not contain a table of contents and is not numbered in accordance with Rule 0800-02-21-.16(6)(c) and also as mandated by Rule 7.01.A. of the "Practice and Procedures" of this Court. However, the Court also notes that the parties submitted the medical records to the mediator and agreed to their admissibility in future hearings. The Court commends the parties, and counsel, for furthering the efficiency of the process but reminds counsel of the provisions of the rules regarding sequential numbering and production of a table of contents for future reference. The Court has numbered the medical records in collective Exhibit 1, sequentially in the lower right corner of each page.

The Court also notes the definition of injury applicable to injuries occurring on or after July 1, 2014 contains specific mention of the injury "arising out of and in the course and *scope* of employment. Tenn. Code Ann. § 50-6-102(13)(2014)(emphasis added). The previous version of the statute defined injury as "arising out of and *in the course* of employment" with no mention of "scope." Tenn. Code Ann. § 50-6-102(12)(2012--effective until July 1, 2014)(emphasis added). The Court notes that the Tennessee Supreme Court has long used the terms "course" and "scope" both interchangeably and as descriptive of the required causal connection between an injury and the employment. See, *Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672 (Tenn. 1991). As this Court noted above, our Supreme Court abides by long-standing authority that "in the course of" refers to the time, place and circumstances of the injury. The *Orman* precedent, adhering to this definition, was cited recently by the Supreme Court in determining whether an injury bore such a rational connection to the work as to support a finding of compensability. Specifically, our Supreme Court stated:

> An injury by accident to an employee is in the course of employment if it occurred while he was performing a duty he was employed to do;....Generally, an injury arises out of and in the *course and scope* of employment if it has a rational connection to the work and occurs while the employee is engaged in the duties of his employment.

*Plotner v. Metal Prep.,* No. W2012-02595-SC-WCM-WC, 2014 LEXIS 677 (Tenn., Sept. 29, 2014) *citing Orman,* 803 S.W.2d at 676 (emphasis added).

In this case, the Court has already found that Ms. Nance was in the course of her employment because she was at a place she would reasonably expected to be when working *and* she was doing something incidental to her work, re-entering her work vehicle, when injured. Both the location and activity elements of "in the course and scope of the employment" are satisfied under the standard of Ms. Nance likely succeeding at a hearing on the merits.

*Arising out of employment*

"Arising out of" the employment refers to the cause or origin of the injury. *Hill,* 942 S.W.2d at 487. The Tennessee Supreme Court has held that, "if it is apparent to the rational mind, *after considering all of the circumstances* that there is a causal connection between the conditions under which the work is required to be performed and the resulting injury, then such accidental injury 'arises out of one's employment.'" *Crew v. First Source Furniture Group,* 259 S.W.3d 656, 664 (Tenn. 2007) *citing Wilhelm v. Krogers,* 235 S.W.3d 122, 127 (Tenn. 2007). (emphasis added).

Randstad argues that the response of Dr. Ellis to its "QUESTIONNAIRE" proves that Ms. Nance's injury did not arise primarily out of her employment. The response of Dr. Ellis, signed on February 4, 2015, reads that it is his "expert medical opinion that her employment did not contribute more than 50% in causing her left knee injury." (emphasis in original). Interestingly, Randstad's Notice of Denial (C-23) is dated January 30, 2015, *before* Dr. Ellis provided his response to the "QUESTIONNAIRE" sent by Randstad's counsel. The form lists

8

the actual date of denial as December 30, 2014. Ex. 5. The Court questions how Randstad could state the basis for denial was, "no medical evidence that complaints are work related" before obtaining Dr. Ellis' response. This is particularly odd considering that all of the medical records prior to December 30, 2014, note a consistent history of injury, consistent findings upon examination and consistent diagnoses. The medical records also reveal that Dr. Inman opined a possible need for an orthopedic evaluation at the first visit to PQC and Dr. Ellis actually *prescribed* an orthopedic evaluation as of the third and final visit on December 22, 2014. The evidence supports a finding that Randstad did not base its formal denial upon any medical opinion of an authorized provider, but upon its own determination that the injury did not arise out of the employment.

However, even with Dr. Ellis' statement in the "QUESTIONNAIRE," the Court finds no basis for his opinion in the medical records given the history, the consistent diagnoses of all three physicians, and the statements regarding the need for an orthopedic evaluation. It is important to note that the statutory definition of "arising primarily out of the employment" requires the 50% or more contribution to be opined to a reasonable degree of medical certainty after "*considering all causes.*" Tenn. Code Ann. § 50-6-102(13)(C)(2014)(emphasis added). There is no reference in Dr. Ellis' answer to Randstad's "QUESTIONNAIRE" as to his consideration of anything other than counsel's question itself. The Court finds no evidence demonstrating any other cause for Ms. Nance's knee injury. There is no evidence of any prior knee injury. In fact, Ms. Nance had two (2) DOT physicals at PQC, the last on November 7, 2014, and a mere five (5) weeks before the December 16, 2014 date of injury. At that time, the physical examination revealed a normal musculoskeletal examination including a "normal gait." There is no reference to any knee problem on that date. Further, it is uncontroverted that Ms. Nance reported an injury. Her credible testimony at the hearing is directly consistent with the medical records that contain the same history. Randstad apparently had no question regarding the occurrence or the reporting of an injury because one supervisor even declared a drug screen unnecessary. Ex. 1 at 5.

Tennessee law has long held that medical testimony is not to be "read and evaluated in a vacuum." *Thomas v. Aetna Life & Cas. Co.*, 812 S.W.2d 278, 283 (Tenn. 1991). Instead, the medical proof "must be considered in conjunction with the lay testimony of the employee as to how the injury occurred and the employee's subsequent condition." *Id.* The Court finds nothing in either the current definition of injury or in the fact that the "medical testimony" is found in a stipulated document rather than a formal deposition to supplant this basic principle. Instead, this Court is constrained to evaluate all the evidence, both lay and expert, at this interlocutory stage of the proceedings to determine if Ms. Nance is likely to succeed on the merits at a hearing. In so doing, the Court not only has considered the vagueness of Dr. Ellis' response, but also the lay testimony of Ms. Nance. The Court finds Ms. Nance to be credible. She presented herself respectfully, competently, and without hesitation. The Court sensed no prevarication when directly observing her demeanor upon entering the courtroom on a walker and when taking the witness stand. The Court believes Ms. Nance was in legitimate pain. Her description of injury during her live testimony matches her statement in Randstad's accident report, her history at PQC and the record as a whole. In its totality, the evidence to date is sufficient for this Court to conclude that Ms. Nance would likely prevail at a hearing on the merits regarding the issues of further medical care and temporary disability.

9

In making its findings, this Court is aware of Tennessee Code Annotated section 50-6-102(E) where it is stated that the opinion of "the treating physician, selected by the employee from the employer's designated panel of physicians....shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence." Here, Randstad did not provide a panel. Hence, no presumption of correctness attaches to Dr. Ellis' opinion and there is nothing for Ms. Nance to rebut by a preponderance of the evidence. Even if such were the case, the Court finds that Tennessee Code Annotated section 50-6-239(d)(1) subjects subsection 50-6-102(E) to the mandates of the different standard of proof at an Expedited Hearing. To hold otherwise would require Ms. Nance to rebut a physician's opinion by a preponderance of the evidence while only needing to demonstrate a likelihood of success on all other points.

*Medical benefits*

Having found Ms. Nance has presented sufficient evidence to conclude she would prevail on the merits, the Court turns to the benefits requested. To prove entitlement to medical benefits, the statute does not require an employee to present medical proof of an injury before an employer is required to provide medical benefits. Rather, the statute contemplates that an employer will provide medical care upon receipt of notice of the injury, and then, during the course of treatment and examination, the panel doctor will render an opinion on causation. See Tenn. Code Ann. § 50-6-102(13)(2014). Otherwise, an employee would be forced to seek medical care on her own to begin a claim. However, this premise is not without limitation. Simply reporting an injury in every situation may not compel the provision of benefits. Depending upon the particular circumstances presented, an employer's investigation may reveal facts that prompt a denial of the claim at the outset. When such is the case, an employer should not be denied the right to deny a claim, after adequate investigation, based upon facts that do not support the occurrence of an injury. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063 (Tenn. Work. Comp. App. Bd., March 27, 2015). The employee must then "come forward with sufficient evidence from which the trial court can determine that the employee likely will prove a compensable 'injury by accident' at a hearing on the merits in accordance with section 50-6-239(d)(1)." *Id.* at 7.[6] This is not such a case.

Randstad accepted the claim. It waived a drug screen. It paid for three (3) visits to PQC and never questioned the claim until inexplicably denying it on December 30, 2014, before any medical opinion regarding causation. Our Appeals Board has stated, "[e]very case is different and should be evaluated on its own merits." *McCord* at 6. When evaluating the merits of this case, the Court finds adoption of Randstad's position would force Ms. Nance to "seek out, obtain, and pay for a medical evaluation" before Randstad has an obligation to provide medical benefits. *Id.* at 5. This is both inefficient and unfair under the circumstances. Ms. Nance, upon the evidence presented to date, is entitled to an evaluation by an orthopedic specialist as recommended by Randstad's approved providers.

---

6 The Court is mindful that *McCord* addresses an appeal of an interlocutory order of the Court of Workers' Compensation Claims and, as such, the issues in *McCord* have not yet stood for trial on the merits. However, regardless of the ultimate resolution of *McCord*, the directives of the Appeals Board as to the applicable standard of proof at an Expedited Hearing are binding authority on this Court.

*Temporary disability benefits*

Temporary total disability (TTD) is payable to an injured employee who is totally disabled to work by his injury and while she is recovering as far as the nature of the injury permits. *Cleek v. Wal-Mart Stores, Inc.,* 19 S.W.3d 770, 776 (Tenn. 2000). Under Tennessee law, to establish entitlement to temporary total benefits, the employee must show she was (1) totally disabled to work by a compensable injury; (2) that there was a causal connection between the injury and her inability to work; and (3) the duration of that period of disability." *Id.* When an employee demonstrates the ability to return to work or attains MMI, then TTD benefits are terminated. *Simpson v. Satterfield,* 564 S.W.2d 953, 955 (Tenn. 1978). Here, Ms. Nance has not demonstrated by the evidence submitted that she was *totally* disabled from working. Instead, she has restrictions on her activities. Thus, she is not entitled to temporary total disability benefits.

Nevertheless, Ms. Nance may be entitled to temporary *partial* disability benefits. Temporary partial disability (TPD) refers to the time during which the injured employee is able to resume some gainful employment but has not yet reached maximum recovery. *Williams v. Saturn Corp.,* No. M2004-01215-WC-R3-CV, 2005 LEXIS 1032, *3 (Tenn. Workers' Comp. Panel, November 15, 2005). As with TTD, there must be adequate proof of a causal connection between the injury and the disability for an award of TPD. The Court has already determined that Ms. Nance is likely to prevail at a hearing on the merits as to a causal connection between her disability and her employment under the applicable standard at this Expedited Hearing stage. This Court finds Ms. Nance also has demonstrated the likelihood of prevailing at a hearing on the merits as to an inability to work within her restrictions from PQC. The restrictions, as of the final visit of December 22, 2014, were to remain in effect "until seen by ortho." Ex. 1 at 14. There is no proof that Randstad either accommodated, or attempted to accommodate, these restrictions.

TPD is two-thirds (2/3) of the difference between the average weekly wage and what the employee is able to earn in her partially disabled condition. Tenn. Code Ann. § 50-6-207(2)(2014). Here, the average weekly wage is $314.12 (see Ex. 3) and Ms. Nance is not, due to her restrictions, able to earn a wage. Therefore, her TPD rate is two-thirds (2/3) of $314.12 or $209.42. She is entitled to TPD from the date of injury, December 16, 2014, and ongoing until she is released without restrictions, is able to resume gainful employment at a job earning the same or better wage she received prior to her injury, or until placed at MMI.

**IT IS, THEREFORE, ORDERED** as follows:

1. Randstad shall provide a panel of orthopedic surgeons compliant with Tennessee Code Annotated section 50-6-204(a)(3) for evaluation and/or treatment of the injury of December 16, 2014.

2. Randstad shall, subject to the provisions of Tennessee Code Annotated section 50-6-207(2), pay to Ms. Nance TPD benefits at the rate of $209.42 for the period of December 16, 2014, to the date of this order, a period of eighteen (18) weeks and three (3), or $3,857.52. Randstad shall continue TPD payments to Ms. Nance until she is either placed at MMI or able to work at a job enabling her to earn a wage equal to or better than that

earned at the time of injury.

3. This matter is set for Initial Hearing on June 24, 2015, at 9:30 ~~9:00~~ AM Central Time.

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven (7) business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Division by email to WCCompliance.Program@tn.gov no later than the seventh (7th) business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 27th day of April , 2015.**

**Allen Phillips, Judge**
**Court of Workers' Compensation Claims**

Initial Hearing:

An Initial Hearing has been set with **Judge Allen Phillips, Court of Workers Compensation. You must dial in at 731-422-5263 or 855-543-5038 toll free to participate in your scheduled conference.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation.** All conferences are set using Central Time (CT).

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Request for Appeal upon the opposing party.

4. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The Judge must approve the statement of the evidence before the Clerk of Court shall submit the record to the Clerk of the Appeals Board.

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 27th day of April, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|----------------|------------------|---------|------------|-----------|---------------|
| Tequila Nance | | | | | X | tequilajnance@yahoo.com |
| Hunter Chandler | | | | | X | hunter@speed-seta.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims

13